## HENRY VANDINE, Petitioner, &c.

A by-law of a city is binding upon strangers coming within the territorial limits of the city.

A by-law of the city of Boston, prohibiting any person not duly licensed therefor by the mayor and aldermen, from removing the house-dirt and offal from the city, was held not to be in restraint of trade, but to be a valid by-law.

PETITION for a writ of certiorari to the Municipal Court of the city of Boston. Vandine was prosecuted upon a by-law of Boston, passed in April, 1826, by which it is ordained, that no person shall remove, cart or carry through any of the streets, squares, lanes or alleys of the city, any house-dirt, refuse, offal, filth or animal or vegetable substance from any of the dwellinghouses or other places occupied by the inhabitants, in any cart, wagon, truck, hand-cart or other vehicle, unless such person so removing, &c. together with the cart, &c. shall be duly licensed for that employment and purpose by the mayor and aldermen, upon such terms and conditions as they shall deem the health, comfort, convenience or interest of the city require, on pain of forfeiting a sum not less than three dollars nor more than twenty.

It was proved at the trial, that Vandine transported house-dirt and offal from the yards of houses to his cart standing in the streets of the city.

Vandine being called on for his defence, it was agreed that he was an inhabitant of the town of Cambridge, and that he owned and kept there a large number of hogs.

The judge instructed the jury, that the subject of the regulation was one on which it was proper for the city to legislate, it having relation to the public convenience and the health of the inhabitants, within *St.* 1821, *c.* 110, § 15, 17, and *St.* 1785, *c.* 75, § 7 ; that it was the duty of the city to remove from the streets and houses all nuisances which might generate disease or be prejudicial to the comfort of the inhabitants, and it was both reasonable and proper, that it should be in their discretion to contract with persons to perform the work, so that it might be done on a general system. If it were found on experiment, that the duty would not be thoroughly and

faithfully performed, or would be attended with more expense to the city, if individuals should remove these substances in their own carts and upon their own account, it was competent for the city government to enact a by-law which should subject all such persons to the vigilance of that government, and which should require them to be first licensed. He further instructed the jury, that so far as, by virtue of the general laws of the Commonwealth, the city council had power to make by-laws for governing the city, these regulations were binding on all persons actually resident within its limits, either for business or pleasure, and whether inhabitants or strangers ; that the object of the by-law being to secure to the city the regular and effectual removal, by the public authority, of all sources of nuisance which are collected and accumulated in the houses in the city, by not suffering individuals, under no obligation of trust, to interfere in the same, it amounted to the prohibition of a nuisance ; and that so far as it affected trade, it was not a restraint, but only a regulation of it.

To these directions and opinions the defendant filed exceptions.

*March 31st*    *Dunlap*, in support of the exceptions, said that the by-laws of one town cannot bind the inhabitants of another ; and no peculiar privileges are attached to Boston by reason of its being incorporated as a city. Those who come to *reside* within its territorial limits are subject to its by-laws, but not strangers, who have not the means of knowing the by-laws and do not enjoy the benefits resulting from them. 1 Wooddes. 498, cites 2 Ventr. 33, 34 ; Com. Dig. *Bye-law*, *C* 2 ; Anc. Charters, &c. 195 ; *St*. 1785, *c*. 75, § 7 ; 5 Dane's Abr. 145. If this by-law is essential to the welfare of the city, application should be made to the legislature to empower the city government to pass such an ordinance. It is said the object of it is to preserve the health of the city. Had its operation been limited to the hot months, the remark would have more plausibility. But admitting the assertion to be true, the acts done by the defendant were in furtherance of that object.

The by-law is void, being in restraint of trade. Supposing it to be valid, the city have a monopoly in the raising of swine

189

If strangers, or individuals generally, are not allowed to remove offal, the city government may oblige the inhabitants to give it away. That the city may direct the time and manner of removing filth, is not denied ; but they have no right to say that it shall be removed only by persons having a license. 1 Rol. Abr. 364, *pl.* 5 ; Anc. Charters, &c. 170 ; *Harrison* v. *Godman,* 1 Burr. 12 ; *Bosworth* v. *Hearne,* 2 Str. 1085 ; *Ipswich Taylor's Case,* 11 Co. 53 ; *Case of Monopolies,* ibid. 87.

*Curtis, contrà,* cited to the first point, 2 Kyd on Corp. 103 ; 1 Rol. Abr. 365, *pl.* 8 ; *Chamberlain of London's Case,* 5 Co. 63 ; *Cuddon* v. *Eastwick,* 1 Salk. 192 ; *Butcher's Company* v. *Morey,* 1 H. Bl. 370 ; *Pierce* v. *Bartrum,* Cowp. 269 ; — and as to the authority of the city to pass the by-law in question, *St.* 1785, *c.* 75, § 7 ; 1816, *c.* 44, § 2, 3, 8 ; 1821, *c.* 110, § 17 ; Com. Dig. *Bye-law, C.*

PUTNAM J. delivered the opinion of the Court. The first objection is that this by-law is not binding upon strangers, if it should be considered as binding upon the citizens of Boston.　　　*April 5th.*

Some by-laws are binding upon strangers as well as upon the inhabitants or members of the corporation, and some are not. The distinction is between corporations united as a fraternity for the purposes of business, having no local jurisdiction, and corporations having a territorial jurisdiction ; the former have not, but the latter have power to make by-laws binding upon strangers.

For example ; a by-law of the corporation of Trinity House, "that every mariner, within twenty-four hours after anchorage in the Thames, put his gunpowder on shore, does not bind, because the corporation has no jurisdiction upon the Thames." Com. Dig. *Bye-law, C 2.*

In the case of *Dodwell* v. *The University of Oxford,* 2 Ventr. 33, the Chancellor's Court of the University made a oy-law, that whoever, privileged or not privileged, should be taken walking in the streets at 9 o'clock at night, having no reasonable excuse, by the proctor, &c. should forfeit, &c. And it was held that the corporation could not make a by-law binding upon any who were not of their body. They　　　190

Vandine,  went beyond their jurisdiction, which could not be considered
Petitioner,  as extending to the inhabitants of Oxford who were not
&c.  scholars.  Regard is to be had to the nature of the incorpo-
ration ; if it is a banking incorporation, for example, their by-
laws must be confined to the proper mode of conducting their
affairs.  Where the corporation has a local jurisdiction, their by-
laws affect all who come within it ; for example, the by-law of
the city of London, that no citizen, freeman or stranger, should
expose any broad-cloth to sale within the city before it should
be brought to Blackwell Hall to be examined whether it
were saleable or not, was held binding upon strangers as well
as citizens.  5 Co. 63.

So in *Pierce v. Bartrum,* Cowp. 269, a by-law of the
mayor and common council of the city of Exeter, that no
person should slaughter beasts or keep swine within the walls .
of the city, was held good against the defendant, who was
not free of the city, but only residing there.  He was con-
sidered as an inhabitant *pro hac vice.*  So where the corpo-
ration have jurisdiction over all of the same trade or profes-
sion within certain limits, as the College of Physicians have
for seven miles round London ; whose by-laws regulating the
practice of physic are binding upon all within those limits.

The by-laws which are made by corporations having a
local jurisdiction, are to be observed and obeyed by all who
come within it, in the same manner as aliens and strangers
within the Commonwealth are bound to know and obey the
laws of the land, notwithstanding they may not know the lan-
guage in which they are written.  They receive the benefits
arising from the municipal arrangements, and are presumed to
assent to them, upon the same principle which requires from
them a temporary allegiance to the state for the protection it
affords to them during their residence. [1]

But it is contended that this by-law is void as it is in
restraint of trade, and operates as a monopoly.  Every regula-
tion of trade is in some sense a restraint upon it ; it is some

---

[1] It is enacted by the Revised Statutes, that the by-laws duly made by
any town shall be binding upon all persons coming within the limits thereof,
as well as upon the inhabitants thereof. *C.* 15, § 14. See Angell & Ames on
Corp. 199, 200; *Davis v. Morgan,* 1 Crompt. & Jerv. 587 ; 1 Tyrwh. 457

clog or impediment, but it does not therefore follow that it is to be vacated. If the regulation is unreasonable, it is void;[2] if necessary for the good government of the society, it is good.[1]

The case cited by the counsel for the defendant from 1 Ro'. Abr. 364, was of the former character. The mayor and commonalty of London made a by-law, that no carman within the city should go with his cart, without license from the wardens of such an hospital, under a certain penalty for each offence ; and it was held to be a void by-law, because it was in restraint of the liberty of the trade of a carman, and it was held to be unreasonable, because it went to the private benefit of the wardens of the hospital, and was in the nature of a monopoly. Now we think that case was rightly decided ; it was an act of oppression. We perceive no reason why the wardens of the hospital should have a superintendance and control of all the business of the carmen, thus laying them under a contribution at the will of the wardens.

To arrive at a correct decision whether the by-law be reasonable or not, regard must be had to its object and necessity. Minute regulations are required in a great city, which would be absurd in the country. The cases upon this subject are well collected by Baron *Comyns* in his Digest, title *Bye-law*. It has been found to be reasonable in the city of London, to provide that brewers' drays should not be in the streets there after eleven o'clock in the morning in summer, and one in winter ; that no person should unlade coals out of a barge, if he be not of the porter's company ; thus in some manner restraining trade.

There have been regulations also adopted in that city, that none shall be brokers unless licensed and sworn ; that none shall be hawkers without license ; thus in some measure restraining the natural rights of the subjects. Now it is contended that the by-law under consideration is in restraint, and not a mere regulation, of the trade in which the defendant is

---

[2] See *Clark* v. *Le Cren*, 2 Barn. & Cressw. 59 ; *Hesketh* v. *Braddock*, 3 Burr. 1847 ; *London* v. *Compton*, 7 Dowl. & Ryl. 597 ; *Shaw* v *Pope*, 2 Barn. & Adol. 465.

[1] See Revised Stat *c.* 15, § 13.

engaged ; that he provides as good and tight carts as the men do who are authorized by the city, in the performance of this labor.    We do not perceive that there is any more reason to complain of the law requiring a license to do this work, than of the law prohibiting the keeping of livery stables in any place not licensed.    One might just as well complain of the regulation which prevents him from being an auctioneer without license ; and so of various other trades and concerns which it is found necessary to subject to such restriction.

The great object of the city is to preserve the health of the inhabitants.    To attain that, they wisely disregard any expense which is deemed to be requisite.    They might probably have these offensive substances carried out of the city without any expense, if they would permit the people from the country to take them away at such times and in such manner as would best accommodate them.    Every one will see that if this business were thus managed, there would be continual moving nuisances at all times, and in all the streets of the city, breaking up the streets by their weight and poisoning the air with their effluvia.    It is obvious, that the object and interest of the city, and those of the carmen, in this concern, are extremely different.    But it is contended that the city authorities may regulate strangers and unlicensed persons, in regard to the number of horses and kind of carts to be employed, just as well as they can carts and the conduct of the licensed persons.    It seems to us, however, that the city authority has judged well in this matter.    They prefer to employ men over whom they have an entire control by night and by day, whose services may be always had, and who will be able from habit, to do this work in the best possible way and time.    *Practically* we think the main object of the city government will be better accomplished by the arrangement they have adopted, than by relying upon the labor of others, against whom the government would have no other remedy than by a suit for a breach of contract. , The sources of contagion and disease will be speedily removed in small loads, which will not injure the pavements, nor annoy the in-

habitants.  We are all satisfied that the law is reasonable,[1] and not only within the power of the government to prescribe, but well adapted to preserve the health of the city.

The direction and opinion of the judge of the Municipal Court was entirely correct.

---

[1] Whether a by-law be reasonable or not, is for the court to determine *Commonwealth* v. *Worcester,* 3 Pick. 462; Angell & Ames on Corp. 198.