## Meek *v.* State of Indiana.

[No. 25,647.   Filed June 8, 1933.]

*James   W.   Noel,   Hubert   Hickam,   Alan   W.   Boyd,*

*Robert D. Armstrong* and *William A. Stuckey,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Bernard A. Keltner,* Deputy Attorney-General, for the State.

FANSLER, J.—The appellant was convicted of blackmail. Section 2440, Burns 1926, is as follows:

> "Whoever, either verbally, or by any letter or writing, or any written or printed communication, demands of any person, with menace of personal injury, any chattel, money, or valuable securities; or whoever accuses or threatens to accuse, or knowingly sends or delivers any letter or writing or any written or printed communication, with or without a name subscribed thereto, or signed with a fictitious name, or with any letter, mark or designation, accusing or threatening to accuse, any person of any crime punishable by law, or of any immoral conduct, which, if true, would tend to degrade and disgrace such person, or in any way subject him to the ridicule or contempt of society; or whoever threatens to do any injury to the person or property of any one, with intent to extort or gain from such person any chattel, money or valuable security, or any pecuniary advantage whatsoever, or with any intent to compel the person threatened to do any act against his will, with the intent aforesaid, is guilty of blackmailing, and shall, on conviction, be imprisoned in the state prison not less than one year nor more than five years, to which may be added a fine not exceeding one thousand dollars."

The affidavit, omitting the formal parts, is as follows:

> "William E. Treadway, who being duly sworn, upon his oath says that Ralph Meek late of said County and State, on the 8th day of February, 1928, at and in the County aforesaid, did then and there unlawfully, feloniously and knowingly send and cause to be delivered to Mary Ann Haltom, a certain letter directed to the said Mary Ann Haltom, by the name and description of Mary Ann Haltom, Cataract, Indiana, and did then and there and thereby, wrongfully, and without cause, threaten the said Mary Ann Haltom that he, the said Ralph

Meek, would take, steal and carry away the dead body of the husband of the said Mary Ann Haltom from its grave in the Cataract cemetery for the avowed purpose of selling said body, with the felonious intent on the part of the said Ralph Meek then and there and thereby to wrongfully extort from said Mary Ann Haltom Two Hundred Dollars in lawful current money of the United States, the property of the said Mary Ann Haltom, which letter is as follows, that is to say:

"Miss Mary Ann Haltom
  Cataract Ind
"Dear Miss
  You will be some what surpries to get a letter like this But we always give every one a canch to do as we say We know you dearly love your Husman and we know that you wouden want his body move from where he is resting. But we have been offer a grate some of money for a man about the size of your man and we are going to get his body if you dont do as we say for you to do. For this all we do for a liven is robbe graves. So if you will do as we want you to his body will never be taken by us. You can eather leave two Hundred dollars in Cash under the south west corner of the big red store across from your barn Leave the money in a glass gar. And be sure and put it under there after night. And there is one thing sure dont say any thing to no one about this or the body will be got any way. So we will give you untill next Wednesday night to leave the money there. And if it isent there you may look any time for your Husman body to be gone from his grave. And dont say anything to no one or it will be taken sure.

"Yours watching

"We have been down there and look over everything over. so you had better do as we say—

as affiant is informed and believes, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

The appellant predicates error upon the overruling of his motion in arrest of judgment. He contends that

the affidavit does not state a cause of action under the statute for the reason that there can be no property right in a dead body and that, therefore, the affidavit does not allege sufficient facts to show a threatened injury to the property of Mrs. Haltom. It is also contended that if it be conceded that a property right can exist in a dead body, the letter which is the basis of the prosecution threatens no injury to the body, since removing it is not injuring it.

As to the latter contention, it may be said that the jury might very well have found an implication that the body was to be destroyed or mutilated in the terms of the letter since it is almost impossible to construe the letter to mean that the writer intended to remove the body merely for the purpose of a reburial. Generally the word property in its legal sense means a valuable right or interest in a thing rather than the thing itself. If the widow had any interest in the dead body of her husband which might be considered a property right, it was her right to have the body remain undisturbed in its grave, and a removal of the body would injure and interfere with this property right, and a threat of injury to the body would be unnecessary.

There is much conflict in the authorities as to whether there may be a property right in a dead body. Some of the confusion arises upon a failure to distinguish between the thing in which a property right is held and the right itself. It has been urged that there is no property right since the body may not be sold or bartered away. But this is not conclusive since the same argument may apply to many things in which there may be an unquestioned right of property. Property rights are more limited in some objects than in others, but if there is any right of control over or interest in

an inanimate material thing, it would seem to be a property right.

In this state it is well settled that the bodies of the dead are subject to rights in the surviving kinsmen, which the courts ought to and will protect. *Bogert* v. *City of Indianapolis* (1859), 13 Ind. 134; *Renihan et al.* v. *Wright et al.* (1895), 125 Ind. 536, 25 N. E. 822, 9 L. R. A. 514, 21 Am. St. Rep. 249; *Orr* v. *Dayton & Muncie Traction Co.* (1912), 178 Ind. 40, 96 N. E. 462, 48 L. R. A. (N. S.) 474, Ann. Cas. 1915B, 1277.

The part of the statute applicable to the charge declares against threats "to do any injury to the person or property of any one." The words "to the person" are not used in the limited sense of "personal injury," since the first clause declares against the more limited injury. The term "injury to the person or property" must, therefore, be construed in the broader sense and as intended to include a threat to invade any right for the invasion of which an action in damages would lie for injury to the person or property. The damage that would result to a widow from the disinterment, removal or destruction of the body of her husband consists principally, at least, in physical and mental pain, anguish and suffering, and to that extent is an "injury to the person" and actionable as such.

The gravamen of the offense charged is the intent to practice extortion; the means, a threatened injury to the person. The fact that the threatened act would gravely injure the widow and cause her great suffering and anguish is so apparent to every enlightened perception of decency, personal right, and good morals as to need no exposition.

The jury was instructed that every material allegation in the affidavit must be proven beyond a reasonable

doubt before they might find the defendant guilty. The affidavit charges an offense within the statute, and there is sufficient evidence of every material fact, including the identification of the appellant as the writer of the letter, to sustain the verdict.

The sheriff testified that he was watching the place where the money had been deposited as directed in the letter. That he saw the defendant and another come to the place. That he did not know the other person at the time, but later found out who he was, and that he knew it was the same person. To the question, "You may state who it was," the appellant objected. The witness was permitted to answer, "Ora Turner." The trial court observed the witness while he was testifying and was in a better position to gather the meaning of the questions and answers than we can be. The testimony can easily be construed as meaning that the sheriff did not know the name of the other person at the time, but that he later found out his name, and that it was the same person he had seen with the defendant. If the court and jury understood that this was what was intended by the testimony, it was properly admitted. We cannot say that any other interpretation was put upon it and, therefore, cannot say that it was erroneously admitted or prejudicial to the rights of the appellant.

We find no error in the record. Judgment affirmed.

Hughes, J., not participating.