## CITY OF INDIANAPOLIS ET AL. *v.* RYAN ET AL.

[No. 26,504. Filed April 29, 1937. Rehearing denied
September 21, 1937.]

*Edward H. Knight, James E. Deery, Herbert Spencer, Walter Myers, Donald L. Smith, Floyd J. Mattice, Michael B. Reddington,* and *Clyde E. Baker,* for appellants.

*Denny, Adams, Baker & Orbison,* for appellees.

FANSLER, J.—Appellees brought this action for an injunction, and, after a trial, recovered judgment enjoining appellants from interfering with the plaintiffs "in the conduct of their business of receiving, collecting, hauling or transporting food products, such as are left from the tables, and from the preparation of foods," from certain specified restaurants.

A motion for a new trial was overruled, and upon this ruling error is assigned.

Indianapolis is a city of the first class. Section 48-4235 Burns Ann. St. 1933, section 11563 Baldwin's Ind. St. 1934, defines the duties of the department of sanitation in first-class cities, respecting garbage and ashes, as follows: "It shall be the duty of each such department of sanitation to haul away and to dispose of all garbage, that is to say kitchen refuse from cooking food, found in its sanitary district, from private kitchens and the kitchens of all other establishments and institutions, and no other person may lawfully haul away from the place of its production any such garbage produced or found in any such sanitary district, and any other person convicted of such hauling shall be fined for each offense in a sum not greater than twenty-five dollars

($25.00)." There is an ordinance of the city of Indianapolis, which is set out in the complaint and which is in evidence, providing as follows: "That it shall be unlawful for any person, firm or corporation to take, collect or transport garbage, collected or in course of collection, upon the streets or alleys of said city, and any one violating the provisions of this ordinance shall be fined in a sum not to exceed Five Hundred ($500.00) Dollars, to which may be added not to exceed sixty (60) days in jail." The complaint alleges that this ordinance is invalid and unconstitutional. Preceding the judgment, the court found that the allegations of plaintiffs' complaint are true, "except those parts thereof relating to the alleged invalidity of 'General Ordinance No. 84, 1933'," the ordinance above set out.

The complaint alleges that plaintiffs are engaged in feeding hogs on their farm; that they were purchasing from certain restaurants or cafeterias and several institutions, located in the city of Indianapolis, under a contract, "all such food products as are left from the tables, and from the preparation of such foods"; that the foods so collected are placed in galvanized containers; that the containers are cleaned and sterilized each day before used, and otherwise carefully handled so that the food will be preserved and may not become spoiled, or become a source of noxious, unpleasant, or disagreeable odors; that the containers are moved in a careful and prudent manner through the streets of Indianapolis so as not to interfere with the traffic of such city; that at no time is the food kept in the containers for more than twenty-four hours; that nothing is done by plaintiffs, or the persons from whom they buy the food products, which in any way interferes, or is likely to interfere, with, or endanger, the public health or safety, or become a menace thereto. It is further alleged that the foods purchased by plaintiffs

"is not what is commonly known as garbage or kitchen refuse and it is not putrid, decayed, worthless, offensive, wasted or abandoned matter, but is food left from the tables at said restaurants and cafeterias, and is the private property of said persons and this plaintiff." It is alleged that the ordinance is void under section 10 of article 1 of the Federal Constitution, because it impairs the obligation of contracts, and under the Fourteenth Amendment to the Federal Constitution, because it deprives persons of property without due process of law, and under the Bill of Rights of the Constitution of Indiana. It was contended by appellees that the ordinance in question was not enacted as a police regulation, but as a source of revenue, and that the city profits from the sale of greases and other by-products of the substances collected. This does not take into consideration the statute of the state of Indiana, which prohibits the private collection of garbage if the substances collected are garbage.

That courts will not question the legislative purpose in enacting statutes and ordinances upon subjects affecting the public welfare is too well settled to require the citation of authorities. As noted above, the judgment of the trial court was not upon the theory that the ordinance and the statute are invalid. We deem it unnecessary to consider those questions further. See *Jansen Farms, Inc.* v. *City of Indianapolis* (1930), 202 Ind. 138, 146, 147, 171 N. E. 199, 201, 202, 72 A. L. R. 514, 519, 520.

It is alleged in the complaint "that the defendant City of Indianapolis has no right in or to said food products, to exclusion of the owners thereof or those who buy the same (as declared by the Supreme Court of Indiana, in the recent case of *Jansen Farms* v. *City of Indianapolis*)." From the recitals in the finding and judgment of the court below, it must be assumed that the judgment

for appellees was upon the theory that, in collecting waste foods in the manner described in the complaint, the statute and ordinance were not violated, and that this decision was upon authority of the case referred to. The opinion in the Jansen case was by a divided court. Appellants urgently contend that that part of the opinion "which attempts to distinguish between the so-called food products, such as are left from the tables, and from the preparation of foods, and ordinary garbage, which the trial court followed in the case at bar, is unsound, illogical, in conflict with the other principles correctly set forth in the opinion," and to that extent should be overruled and modified.

In that part of the opinion in which a distinction is made between such food products as are collected here, and garbage as referred to in the statute, reference is made to *Bishop* v. *City of Tulsa* (1922), 21 Okla. Crim. 457, 209 Pac. 228, 27 A. L. R. 1008. The paragraph writer in A. L. R. seems to have correctly summarized the effect of that opinion in the words "by-products of a kitchen or restaurant, used or cared for in a harmless, inoffensive, sanitary manner, are not necessarily 'garbage' within the ordinary meaning of the term." In other words, substances that would otherwise be "garbage" may be changed in character if cared for in a harmless, inoffensive, sanitary manner. In the Oklahoma case, table refuse was mixed with cereals and other substances on the premises where produced and packed in cans labeled "Hog Food." It was afterwards taken by the owner and others associated with him to farms, where it was used as hog food.

But the question of whether or not the owners of table scraps and refuse, such substances as are ordinarily referred to as garbage, can, by combining them with other substances and manufacturing them into animal food or other material, avoid

the force of the statute, is not here presented, nor was it presented in the Jansen case. In the Jansen case, and in the case at bar, the rejected food-stuffs were taken from the premises where produced in their original form. It is said in the Jansen case (p. 146) : "In recent years, the increased price of foodstuffs and feed, and the development of scientific methods of the reduction of fats, have been so great as to make possible a considerable property value in this former waste material, and the development of the science of refrigeration is making it possible to preserve and handle such material so as not to be a menace to health." But the question of whether the handling and disposition of such substances is a menace to health is primarily a legislative question with which the courts have no concern. It is well settled that, if any state of facts reasonably can be conceived that will sustain a law, the existence of that state of facts must be assumed. Therefore, while it may be "possible" to preserve and handle such material so as not to be a menace to health, the question of whether it is safe to rely upon its being so handled is for the Legislature. The fact that the materials may have a property value, or even a considerable property value, does not bar their destruction or the right of the public to control their disposition if the welfare of the public demands it, and the Jansen case does not go so far as to hold that there is no such public right. The decision, on the contrary, seems to be based upon the assumption that the word "garbage", as used in the statute and defined as "kitchen refuse from cooking food," is not broad enough to cover "food products left from the tables at the hotel and two restaurants, which have not been abandoned and which are not waste." It is said (p. 147) : "In the case at bar, the sanitary district law rather narrowly defines 'garbage' to be 'kitchen refuse from cooking food.' The product here involved is not shown to

be offensive or harmful as handled, and we cannot extend the definition given in the statute." But the city was not burdened with the responsibility of showing that the product was offensive or harmful as handled. The Legislature has the right to regulate the disposal of the material if it is dangerous to the public health or welfare, or if it *may become* dangerous. Once it is conceded that there is a public interest in the disposal of such substances, and it cannot be questioned that there is, the government is not required to prove that in each specified case the particular items and substances were handled in such a manner as to be offensive and harmful. If such were the law, the command of the statute that the city shall haul away and dispose of all such matter, and that no other person may lawfully haul such matter from the place of its production, would be subject to the requirement that, in respect to each private residence, the duty of the city would only extend to disposing of matter "offensive or harmful as handled" by others, who, by the express terms of the statute, are forbidden to handle it at all, and the duty of the city would vary from time to time, depending upon its ability to establish to the satisfaction of a court that the kitchen refuse from each private residence is "offensive or harmful as handled" at the particular instant. Such a construction would destroy the statute as written and substitute therefor a rule requiring the city to haul away and dispose of garbage not otherwise being disposed of or hauled away by other persons in a manner that cannot be shown to be offensive or harmful. Since it may be reasonably believed that a uniform system of collecting and disposing of garbage is necessary in order to protect the public from danger, the Legislature had power to provide for such a uniform system, notwithstanding that in some cases it would otherwise be disposed of without harm to the public.

The purpose of the statute is clear. There can be no reasonable doubt as to the legislative intention that the city shall remove all food refuse which is discarded as human food and which is to be disposed of as refuse food matter. To limit its effect to substances abandoned by the owner, in the sense that he is relinquishing any right of ownership in them, or to control their disposition, would destroy the statute.

The statute must be construed as requiring the sanitary department to haul away and dispose of all kitchen refuse from cooking food, which is discarded as human food, and as forbidding any other person to collect or remove such substances, without regard to the manner in which they are handled, or to whether the substances removed in any particular case are offensive or harmful as handled. It cannot be doubted that private individuals may equip themselves to remove such substances from a few, or many, or all, of the kitchens in the city, in a manner that is just as sanitary and safe as the manner adopted by the city. But the Legislature appears to have determined that it is not safe to depend upon such private removal, and has commanded that the sanitary department of the city remove all of such substances. Such a determination is within the jurisdiction of the Legislature. It cannot be said that it is not justified as a police measure.

In so far as it is in conflict with this opinion, *Jansen Farms, Inc.* v. *City of Indianapolis, supra,* is overruled.

The other questions sought to be presented are fully disposed of and settled by the opinion in *Walker et al.* v. *Jameson* (1894), 140 Ind. 591, 37 N. E. 402, 39 N. E. 869.

Judgment reversed, with instructions to enter judgment for appellants.