CLASON *v.* STATE OF INDIANA.

[No. 27,099. Filed November 1, 1938. Rehearing denied November 29, 1938.]

*William H. Thompson* and *Albert L. Rabb,* for appellant.

*Omer S. Jackson,* Attorney-General, *A. J. Stevenson,* Assistant Attorney-General, and *Rexell A. Boyd,* Deputy Attorney-General, for the State.

SHAKE, J.—The appellant was charged by affidavit with unlawfully transporting a dead animal, not slaughtered and intended for human food, over a highway of this state to a disposal plant located in Illinois, without being licensed as provided in chapter 278, Acts 1937, §§16-817 to 16-837 Burns' Ann. St. 1933 (Pocket Supp.), §§3901-1 to 3901-22 Baldwin's Supp. 1937. There was a trial by the court, the evidence being stipulated, and the appellant was found guilty and fined. He has appealed, assigning that the affidavit upon which he was prosecuted did not charge a public offense and that the court erred in denying his motion in arrest and in denying him a new trial.

This is the second appeal of this cause, the former case being reported as *State* v. *Clason* (1938), 213 Ind.

461, 12 N. E. (2d) 750, 13 N. E. (2d) 307. That appeal involved only the sufficiency of the charge. This court held the affidavit good and, on the authority of the former opinion, we now hold that there was no error in overruling appellant's motion to quash the affidavit filed subsequent to the first appeal.

It is conceded by the appellant that "insofar as this statute prescribes the kind of vehicles and the manner in which (but not the places to which) carcasses may be transported over the highways of this State, the statute appears to be within the scope of the police power; does not conflict with Federal legislation; and bears a reasonable relation to the declared purpose of the enactment, viz., the limitation of the spread of disease, the protection of the public health, and the prevention of nuisances."

A number of propositions are presented and urged in support of the appellant's contentions, but we believe that they may be fairly summarized as follows: That since the statute authorizes the transportation of carcasses of dead animals over the highways of the state but limits such transportation to carriers of licensed operators of reduction plants in this state, the effect of the statute is to prohibit interstate commerce of such dead animals in violation of article 1, section 8, clause 3 of the Constitution of the United States. Appellant's position may be illustrated by this hypothetical situation: Since a person operating a vehicle constructed and equipped as required by the act, may obtain a license for its use in transporting dead animals to a licensed reduction plan in Indiana, but may not employ a like vehicle, possessing the same sanitary features, to transport dead animals across the boundaries of this state, the statute must be construed as prohibitory and not merely as regulatory.

It is important, we think, to keep constantly in mind

the nature of the objects with which the statute deals. That the carcasses of large animals not killed for human consumption are inherently dangerous to the public health and liable to become nuisances is clearly disclosed by the stipulation upon which the case was tried below. It was there shown that a majority of such animals die from contagious or infectious diseases, many of which are readily transmissible to human beings; that in the case of such dead animals decomposition starts within five hours after death, and that if such carcasses are not disposed of within twenty-four hours they will produce noxious odors over a wide area; that contagious and infectious diseases may be communicated to man and beasts by the transportation of the bodies of such dead animals upon the highways, but that the dangers incident to such transportation may be minimized by the proper cleansing and disinfecting of the vehicles employed for that purpose. It was further stipulated that there are now thirty-eight disposal plants in the State of Indiana, licensed and operating under the act; that these plants are so distributed and equipped as to dispose of the bodies of all large animals not intended and slaughtered for human food, as die within the limits of the state, and that the State of Indiana has a state veterinarian and facilities for the enforcement of the act. One provision of the statute provides that: "After the bodies of dead animals have been unloaded from any vehicle used for the transportation thereof to the disposal plant, on each trip, such vehicle and all parts thereof, and in the event draught animals are used to draw such conveyances, the feet of such animals, shall be thoroughly cleansed and disinfected in such manner and with such a solution as the state veterinarian shall prescribe by regulation, and in addition thereto all such vehicles shall be washed out thoroughly with steam or hot water after each use

thereof in transporting such dead bodies." Acts 1937, Ch. 278, §11 (e), §16-827 (e) Burns 1933 (Pocket Supp.), §3901-11e Baldwin's Supp. 1937.

It seems clear, therefore, that the statute under consideration is not dealing with an article of commerce as that term is ordinarily used and understood. And while it may be conceded that the bodies of dead animals have a commercial value, we do not think that it is to be doubted that the State of Indiana might, by appropriate legislation, have specifically provided that there should be no commerce in such bodies, but that the same should be destroyed without recompense to the owners thereof. In the case of *City of Indianapolis* v. *Ryan* (1937), 212 Ind. 447, 7 N. E. (2d) 974, this court held that it was within the proper function of the Legislature to regulate the disposition of garbage and to provide for its destruction, notwithstanding its intrinsic value. We think it equally clear that it would be within the purview of our General Assembly to prohibit the importation into this state of the carcasses of large dead animals not slaughtered for human consumption. In the case of *Bowman* v. *Chicago & Northwestern Ry. Co.* (1888), 125 U. S. 465, 482, 8 S. Ct. 689, 1062, 31 L. Ed. 700, the Supreme Court of the United States made this observation relative to the powers of the state to impose quarantine provisions: "Doubtless the States have power to provide by law suitable measures to prevent the introduction into the States of articles of trade which, on account of their existing condition, would bring in and spread disease, pestilence, and death, such as rags or other substances infected with the germs of yellow fever or the virus of smallpox, or cattle or meat or other provisions that are diseased or decayed, or otherwise, from their condition and quality, unfit for human use or consumption. Such articles are not merchantable; they are not legitimate subjects of trade and

commerce. They may be rightly outlawed as intrinsically and directly the immediate sources and causes of destruction to human health and life. The self-protecting power of each State, therefore, may be rightfully exerted against their introduction, and such exercises of power cannot be considered regulations of commerce prohibited by the Constitution."

But one question remains, and that is whether the state, in the exercise of its police power, may prohibit the interstate transportation of dead animals by ██ a plan that allows intrastate transportation by its licensees under such circumstances that may result in the profitable handling of ·such articles within the state. As we have already suggested, it is not to be doubted but that the state might have set up and operated its own disposal plants. If this had been done, the effect would have been to divest such dead bodies of every semblance of merchantable property. Instead of adopting this means of coping with the problem, the General Assembly has authorized the plan embraced in the statute. It was apparently found that by licensing carriers and disposal plants, by-products might be salvaged sufficient to render the business profitable to the licensees, thereby relieving the state of the burden of dealing directly with the problem. The principles of constitutional law that protect interstate commerce are no more basic or sacred than those that protect private property from confiscation. It follows, *a fortiori,* that the inherent police power of the state, in dealing with a subject of this character, is sufficient to divest the carcasses of dead animals of their attributes of commerce. And it may be pointed out that if the statute under consideration was construed as severable in character, so that the regulatory features might be preserved, and interstate traffic permitted, as appellant contends, this construction might result in destroying

the whole plan. If a substantial percentage of these carcasses were exported from the state through the operation of interstate commerce, those remaining within the state might be so reduced in quantity that it would no longer be profitable for licensees to operate their plants. The state would then be confronted with the problem of incurring great expense to dispose of those remaining, and this expense might well be increased by a reduction in the return from the by-products recoverable.

We have already quoted from a section of the act which requires that vehicles and the feet of draught animals used in transporting carcasses to the licensed disposal plants of the state, shall be thoroughly cleansed and disinfected after each delivery and before again going upon the highways of the state. It must be presumed that the state has ample facilities for the enforcement of this provision. If the transportation of dead animals from points within this state to places beyond its boundaries is to be permitted, it is conceivable that vehicles used for that purpose will spread disease in this state upon their return. It is no answer to this problem to say that the state might impose like standards for vehicles used in interstate transportation as are required by the terms of the act. The impracticability of adequate inspection would defeat the ends sought and would place upon the state veterinarian, or some other public agency, the burden of constantly policing every one of the many public highways leading into the state. The provisions of the act against interstate transportation may therefore be considered as in the nature of a quarantine against the bringing into this state of contaminated vehicles that have been used in the transportation of dead animals. We believe that such a quarantine is justifiable and reasonable; that it bears a direct relationship to the objectives sought by

the act considered as a whole, and that any interference with interstate commerce is merely incidental.

The judgment of the Elkhart Circuit Court is affirmed.