**ENERGY SUPPLY, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T05–8908–TA–00030.

Tax Court of Indiana.

Jan. 19, 1990.

---

Steven C. Bradley, Price & Bradley, Jasper, for petitioner.

Linley E. Pearson, Atty. Gen. by Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

## STATEMENT OF THE CASE

Energy Supply, Inc., petitions the Court for an injunction enjoining the Respondent from proceeding with collection of the sales and use tax alleged to be due.

## FACTS

The Court, having heretofore taken Energy Supply, Inc.'s (Energy) Petition to Enjoin the Collection of Tax by the Indiana Department of State Revenue under advisement and counsel having filed briefs with regard to the issues and the evidence presented, now makes the following findings:

1. Energy is an Indiana corporation doing business in the state of Indiana.

2. Energy is in the business of producing marketable coal.

3. Energy purchased trucks, trailers, fuel, parts, tires and supplies between January 1, 1982 and December 31, 1984.

4. Energy used the trucks to haul coal from its two mines located in Spencer County and Daviess County to the Ohio River Dock, a processing plant located on the Ohio River. The Spencer County mine was located twenty-seven (27) miles from Ohio River Dock and the Daviess County mine was located sixty (60) miles from Ohio River Dock.

5. Energy paid a flat "per tonnage" fee to Ohio River Dock to blend and crush the coal. At all times, the Ohio River Dock employees were directed and supervised by Energy employees.

6. While at Ohio River Dock, Energy's coal was never sold to Ohio River Dock and

was never blended with any other company's coal.

7. It was necessary for Energy to crush and blend its coal at Ohio River Dock in order to obtain a marketable product.

8. Energy did not pay any sales and use tax for the period between 1982 to 1984 on the trucks and the items used to maintain the trucks. Energy contends that the trucks were exempt from taxation because they were being used to transport coal; a function which it contends was a part of the production process of producing marketable coal.

9. The Department assessed Energy for sales and use taxes in the amount of $232,076.70, plus penalties and interest, for the period between January 1, 1982 and December 31, 1984.

10. Energy filed its protest of the assessment on April 1, 1986, which the Department subsequently denied.

11. Energy filed a Petition for Rehearing and Reconsideration on December 12, 1986. The Department granted the Petition for Rehearing and Reconsideration. In its Letter of Findings issued on May 8, 1989, the Department sustained Energy's protest in part by reducing the fifty percent (50%) penalty to a ten percent (10%) penalty, but disallowed the remaining portion of Energy's protest by ruling that the sales and use taxes assessed were due for the years 1982, 1983, and 1984, along with a penalty of ten percent (10%), plus interest. The Department denied Energy's protest for the reason that the trucks were not used in an integrated production process because the processing facility was neither owned by Energy nor located on Energy's mine site. The Department contends that the trucks were not used in the production process, but rather, only for transportation.

## DISCUSSION AND DECISION

■ IC 33–3–5–11(c) provides:

(c) After a hearing on the petition filed under subsection (b), the tax court may enjoin the collection of the tax pending the original tax appeal, if the tax court finds that:

(1) the issues raised by the original tax appeal are substantial;

(2) the petitioner has a reasonable opportunity to prevail in the original tax appeal; and

(3) the equitable considerations favoring the enjoining of the collection of the tax outweigh the state's interests in collecting the tax pending the original tax appeal.

The court finds that the issues raised are substantial. IC 6–2.5–5–3(b) provides:

Transactions involving manufacturing machinery, tools, and equipment are exempt from the state gross retail tax if the person acquiring that property acquires it for his direct use in the direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of other tangible personal property.

The Department contends that in order for property to be used directly in the production process, work-in-process cannot be transported between plants that are not part of an integrated process. Furthermore, the Department maintains that an integrated process does not exist if a company travels twenty-seven miles or sixty miles to arrive at a processing plant which that company does not own. *See* 45 I.A.C. 2.2–5–9(g). The interpretation of IC 6–2.5–5–3 presents an issue to the court which could affect companies statewide. *See Video Tape Exchange Co-op of America v. Indiana Dep't of State Revenue* (1986), Ind.Tax, 512 N.E.2d 476, 477. Also, a substantial amount of tax is at issue, $232,076.70. *See Keller Oil Co. v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 501, 503. Therefore the court finds that Energy has satisfied the first requirement imposed by IC 33–3–5–11(c)(1).

■ Energy must next show that it has a reasonable opportunity to prevail in this appeal. IC 6–2.5–5–3 requires Energy to prove that the trucks are used in the "direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of tangible personal property."

The Department's interpretation of IC 6-2.5-5-3 is found in 45 I.A.C. 2.2-5-9(g)(4), which provides: "Transportation equipment used to transport work-in-process, semi-finished, or finished goods between plants which are not part of the same integrated production process is taxable."

The Indiana Supreme Court interpreted the predecessor to IC 6-2.5-5-3, which used similar language, in *Indiana Department of State Revenue v. Cave Stone* (1983), Ind., 457 N.E.2d 520. The court held:

> [T]he equipment was directly used by the Appellees in the direct production, manufacture, mining, processing or finishing of tangible personal property within the terms of Ind.Code § 6-1-2-39(b)(6) [now 6-2.5-5-3]. The transportation equipment was essential to the achievement of a transformation of the crude stone into aggregate stone; it played an integral part in the ongoing process of transformation.... It is elementary that unless the stone is transported from the quarry to the crusher and from the crusher to the stockpiles, no marketable product will result.

*Id.* at 524.

According to the holding in *Cave Stone*, a truck that is used to haul stone to a crusher is used in the direct production or mining of tangible personal property. Energy uses its trucks to haul coal to a crusher. In *Cave Stone*, the court further held:

> [T]he transportation equipment was essential to the job of producing or processing aggregate stone. Inasmuch as the finished product could be produced only if stone were transported from the quarry to the crusher and from the crusher to the stockpiles, the transportation equipment was directly used by the taxpayer in the direct production of aggregate stone.

*Id.* at 525.

Likewise, Energy must transport coal from the mine to the crusher in order to have a finished or marketable product.

However, the crusher to which Energy transports its coal is not located on Ener-gy's premises and is not owned by Energy. The Cave Stone company owned the processing facility. Cave Stone's trucks hauled the stone to Cave Stone's crusher located on Cave Stone's premises. In fact, the trucks were not required to travel more than one-half (½) of a mile to reach the crusher. The trial court in *Cave Stone* held, "The hauling crude stone step constituted transportation of unfinished work in process in a continuous flow from one production step to another within Cave's integrated operations." *Id.* at 522-23.

The issue on which Energy must prevail in order to obtain an exemption is to prove that its operation is an integrated operation, even though the trucks are driven as far as sixty miles from the mine site.

In *Indiana Department of State Revenue v. Kimball International, Inc.* (1988), Ind.App., 520 N.E.2d 454, the court of appeals held:

> [T]o determine whether equipment has the requisite immediate link, the focus is on the *entire manufacturing process*. From this viewpoint, the equipment will be held exempt if it is an essential and integral part of an integrated process that produces tangible personal property.
>
> Thus, in the present case, the trial court was required to examine the entire process Kimball uses to transform raw wood into finished wood products and determine if the spray booths, air make up units and their associated parts are essential integral parts of the entire manufacturing process.... Virtually every witness testified that without the spray booths, air make up units and associated parts, the manufacturing process would not be possible. It is true, as the Department contends, that the evidence shows that Kimball's process would be economically unfeasible and that *Cave Stone* at least implies that economics is not the appropriate measure. Nonetheless, the evidence also supports the findings that without the equipment Kimball's entire process would be impossible from an operational standpoint and from the standpoint of safety. Accord-

ingly the trial court correctly found that Kimball qualified for the exemption.

*Id.* at 457 (emphasis added).

Accordingly, the court should examine the manufacturing process used by Energy to transform the raw coal into the finished product, marketable coal. Evidence has been presented that hauling the coal to the processing plant is necessary in order to obtain a marketable product. Although other alternatives are available, Energy asserts that the trucks are necessary to haul the coal to the processing plant. The court could find that the processing plant to which the trucks are driven is a part of Energy's integrated manufacturing process because Energy's employees are in control of supervising the coal at the plant, the coal is never sold to the plant, and the coal is not a finished product until it leaves the plant. Based upon this analysis, the court could reasonably find that Energy's trucks are a part of an integrated process that does not end until after the coal leaves the processing plant. Therefore the court finds that Energy has a reasonable opportunity to prevail in this tax appeal.

The last element that Energy must prove by a preponderance of the evidence is that "the equitable considerations favoring the enjoining of the collection of the tax outweigh the state's interests in collecting the tax pending the original tax appeal." IC 33–3–5–11(c)(3).

 This court held in *Faris Mailing, Inc. v. Indiana Department of State Revenue* (1987), Ind.Tax, 512 N.E.2d 480, 482, that where there is a probability that a taxpayer can borrow funds necessary to pay the tax, as an alternative to liquidation, no irreparable harm occurs if an injunction is not issued. Conversely, it would seem that if a party can show that it cannot borrow funds to pay the tax, the party could show irreparable harm from the denial of an injunction.

A representative from Energy testified that there is no equipment that can be sold to pay the sales and use tax. The company has already sold all of its surplus equipment. He further testified that Energy could not afford to halt its operations and begin operations at a later date because the recapitalization costs would be too high. The representative stated that Energy has failed in its attempts to obtain financing or refinancing to pay the tax or to obtain working capital. The Department has not countered Energy's evidence that equity does not favor Energy. Therefore, the court finds that Energy has met the last requirement of IC 33–3–5–11.

IT IS THEREFORE ORDERED that until further order of this court, Respondent, Indiana Department of State Revenue, is hereby enjoined from proceeding to collect the tax, interest or penalties herein alleged to be due.

IT IS FURTHER ORDERED that pursuant to Trial Rule 65(C), the Respondent, Indiana Department of State Revenue, shall hold the Petitioner's, Energy Supply, Inc.'s undisputed income tax refunds for the years 1984 and 1985 that it currently holds, in the approximate amount of $152,000 and claims for refunds of sales and use tax for the years 1982 and 1985 in the approximate amount of $52,000, as security against any losses it could incur as a result of being wrongfully enjoined or restrained.

IT IS FURTHER ORDERED that the Petitioner, Energy Supply, Inc., is directed not to dispose of or otherwise transfer any of its assets except in the ordinary course of business. The Petitioner, Energy Supply Inc., is further directed to permit the Respondent, Indiana Department of State Revenue, to audit its records at reasonable times for purposes of verification.

ORDERED.