INDIANA WASTE SYSTEMS OF INDIANA, INC., d/b/a Waste Management of Indianapolis, Petitioner,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T10–9201–TA–00004.

Tax Court of Indiana.

April 27, 1994.

James E. Freeman, Jr., Sansberry, Dickmann, Freeman & Builta, Anderson, for petitioner.

Pamela Carter, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

This appeal asks whether garbage constitutes "property," as that word is used in Indiana Code 6–2.5–5–27, the public transportation exemption from the gross retail (sales) and use taxes. The Petitioner, Indiana Waste Systems of Indiana, Inc. d/b/a Waste Management of Indianapolis (Waste Management), operates a garbage hauling business in and around Indianapolis. Waste Management paid sales and use tax on tangible personal property it uses in its business and filed a claim for refund for 1987, 1988, 1989, and 1990 with the Respondent, the Indiana Department of State Revenue (the Department). The Department did not respond to the claim for refund, and Waste Management now appeals.

## ISSUES

Waste Management claims its purchases of trucks, truck parts, fuel, tires, utilities, and other miscellaneous items are exempt from sales and use tax under four different exemption statutes.

I. IND.CODE 6–2.5–5–3, the equipment exemption.

II. IND.CODE 6–2.5–5–30, the environmental quality exemption.

III. IND.CODE 6–2.5–5–16, the governmental agency/instrumentality exemption.

IV. IND.CODE 6–2.5–5–27, the public transportation exemption mentioned above.

## FACTS

The undisputed material facts reveal that Waste Management is an Indiana for-profit corporation engaged in the business of hauling garbage. Since 1984, Waste Management, along with several other private contractors, has operated under contract with the Indianapolis Board of Public Works (the Board). The Board pays Waste Management to pick up, transport, and deposit solid waste from Marion County businesses, industries, and homes. Waste Management operates approximately fifty trucks, none of which is devoted exclusively to fulfilling Waste Management's contract with the Board.

Until December 1988, Waste Management delivered all the commercial, industrial, and residential garbage to Board designated landfills in and around Indianapolis. Since December 1988, Waste Management has delivered the garbage to the Indianapolis Ogden Martin Resource Recovery Facility (Ogden Martin). Ogden Martin burns almost 100 percent of the residential garbage it receives, which generates steam. Ogden Martin sells the steam to the Indianapolis Power and Light Company (IPALCO), which uses it to generate electricity for downtown Indianapolis buildings, including the State House. Ogden Martin disposes of approximately 60 percent of the commercial and industrial garbage in the same fashion as the residential garbage. The other 40 percent of the commercial and industrial garbage is unsuitable for burning, and Waste Management takes it to Board designated landfills in and around Indianapolis.

A corporation related to Waste Management owns and operates the Danville Recycling & Disposal Facility (Danville RDF) in Danville, Indiana, a few miles west of Indianapolis. Danville RDF is a sanitary landfill that accepts only non-hazardous waste. The

decomposition of the waste it accepts creates, among other things, methane and carbon dioxide. Methane, the principal component of natural gas, is combustible, and a number of landfills around the country recover methane and use it to produce electricity, which is then sold commercially. Waste Management presented evidence Danville RDF planned to embark on a similar program.

## DISCUSSION AND DECISION

*Standard of Review*

Because this is an appeal from the Department, the court reviews the matter *de novo* and is bound by neither the evidence nor the issues raised at the administrative level. *Maurer v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 607 N.E.2d 985, 986 (citing IND.CODE 6–8.1–9–1(d); *Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue* (1988), Ind.Tax, 528 N.E.2d 867, 869, *aff'd* (1991), Ind., 572 N.E.2d 481, *cert. denied,* (1991), —— U.S. ——, 112 S.Ct. 337, 116 L.Ed.2d 277). Waste Management seeks the benefits of exemptions from tax and therefore bears the burden to show it falls within the terms of the exemptions. *See id.* (citing *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1225). Moreover, the court must construe any ambiguities in the exemptions strictly in favor of the Department. *Id.*

The parties have filed cross motions for summary judgment. The court may grant summary judgment only if there is no genuine issue of material fact and one of the parties is entitled to judgment as a matter of law. *Harlan Sprague Dawley, Inc.*, 605 N.E.2d at 1224 (citing *C & C Oil Co. v. Indiana Dep't of State Revenue* (1991), Ind. Tax, 570 N.E.2d 1376, 1378).

Since January 1991, parties cannot "rely without specificity on the entire assembled record—depositions, answers to interrogatories, and admissions—to fend off or support motions for summary judgment." *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434. Instead, "each party to a summary judgment motion [must] '*designate* to the court all *parts* of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion.'" *Id.* (quoting Ind.Trial Rule 56(C)) (alteration in original).

I

Waste Management claims many of its purchases fall within IC 6–2.5–5–3, referred to as the equipment exemption. *See General Motors Corp. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 578 N.E.2d 399, 401, *aff'd* (1992), Ind., 599 N.E.2d 588. The equipment exemption provides in pertinent part that "[t]ransactions involving manufacturing machinery, tools, and equipment are exempt from the state gross retail tax if the person acquiring that property acquires it for *his direct use in the direct* production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of other tangible personal property." IC 6–2.5–5–3(b) (emphasis added). The double direct standard, arising from the emphasized statutory language, is the touchstone of the equipment exemption. *General Motors Corp.*, 578 N.E.2d at 401. It "is met when the ... equipment used is an essential and integral part of an integrated production process." *Id.* An integrated production process, whether of few steps or many, lies at the heart of the equipment exemption. *See, e.g., Indiana Dep't of State Revenue v. Cave Stone, Inc.* (1983), Ind., 457 N.E.2d 520; *Harlan Sprague Dawley, Inc.*, 605 N.E.2d 1222; *General Motors Corp.*, 578 N.E.2d 399, *aff'd*, 599 N.E.2d 588; *Energy Supply, Inc. v. Indiana Dep't of State Revenue* (1990), Ind. Tax, 549 N.E.2d 1110; *State Dep't of Revenue v. Calcar Quarries, Inc.* (1979), 182 Ind. App. 84, 394 N.E.2d 939. Waste Management asserts it is entitled to the equipment exemption because it begins an integrated production process for electricity, methane, and carbon dioxide by compressing the garbage it puts in its trucks. Specifically leaving all other issues this claim raises for another day, Waste Management fails to show it is entitled to the exemption because the minimum threshold requirement of the double direct standard is that the taxpayer who purchases the equipment in question be the

entity that uses the equipment "for *his* direct use in the direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of other tangible personal property." IC 6–2.5–5–3(b) (emphasis added). *See Cave Stone,* 457 N.E.2d at 525. Waste Management, though, does not engage in any of the listed activities. It simply transports garbage. That it compresses the garbage is irrelevant: to have a colorable claim for the equipment exemption, it would have to compress the garbage as part of its own process to produce other tangible personal property, not as part of an alleged process of another taxpayer. If there is an integrated production process involving the garbage that will satisfy the double direct standard of the equipment exemption, and the court expresses no opinion on this question, it is Ogden Martin or Danville RDF that employs it, not Waste Management.[1]

## II

■ Next, Waste Management claims some of its purchases fall within IC 6–2.5–5–30, the environmental quality exemption, which provides:

Sales of tangible personal property are exempt from the state gross retail tax if:

(1) the property constitutes, is incorporated into, or is consumed in the operation of, a device, facility, or structure predominantly used and acquired for the purpose of complying with any state, local, or federal environmental quality statutes, regulations, or standards; and

(2) the person acquiring the property is engaged in the business of manufacturing, processing, refining, mining, or agriculture.

■ Waste Management fares no better under this exemption than under the equipment exemption. Waste Management is simply not "engaged in the business of manufacturing, processing, refining, mining, or agriculture," as required by subsection (2). Rather, Waste Management is engaged in the business of picking up, transporting, and disposing of garbage. Even if either or both Ogden Martin and the corporation that operates Danville RDF are engaged in a business within the ambit of subsection (2), Waste Management cannot claim the benefit; like the equipment exemption, the environmental quality exemption requires the person acquiring the property to be engaged in a business within the ambit of subsection (2).

## III

■ Waste Management also claims it is entitled to the benefits of IC 6–2.5–5–16, the sales tax exemption for governmental agencies and instrumentalities. The statute provides:

Transactions involving tangible personal property, public utility commodities, and public utility service are exempt from the state gross retail tax, if the person acquiring the property, commodities, or service:

(1) is the state of Indiana, an agency or instrumentality of the state, a political subdivision of the state, or an *agency or instrumentality of a political subdivision* of the state; and

(2) *predominantly uses the property, commodities, or service to perform its governmental functions.*

IC 6–2.5–5–16 (emphases added).[2] Specifically, Waste Management asserts it acts as an agency or instrumentality of the City of Indianapolis by virtue of its contract with the Board.

The Indiana Supreme Court addressed the question of nongovernmental entities acting

---

1. This result holds true for garbage sent to both Ogden Martin and Danville RDF, even though Danville RDF is owned and operated by one of Waste Management's related corporations. Close corporate relationships, standing alone, do not break down the walls of separate corporate identity. *See SFN Shareholders Grantor Trust v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 603 N.E.2d 194; *First Nat'l Leasing and Fin. Corp. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 598 N.E.2d 640. Waste Management simply cannot claim the equipment exemption for the activities of another taxpayer. *See Cave Stone,* 457 N.E.2d at 525.

2. Since 1991, the exemption has included within its ambit solid waste management districts and joint solid waste management districts established under IND.CODE 13–9.5–2. *See* P.L. 1991–25, § 3.

as agencies or instrumentalities of political subdivisions of the state in *Ayres v. Indian Heights Volunteer Fire Department, Inc.* (1986), Ind., 493 N.E.2d 1229. In *Ayres,* a volunteer fire department was summoned to a residence to put out a vehicle fire in a driveway. In their attempt to stop the blaze, the firefighters ignited a garage on the property. The homeowners brought suit for negligence against the volunteer fire department, as well their township trustee, who like all township trustees, was required to provide fire protection to township residents. *Id.* at 1235. The trustee fulfilled his obligation by contracting with the volunteer fire department. *Id.* The trustee was immune from liability under the Indiana Tort Claims Act,[3] *id.,* and the supreme court held the immunity extended to the fire department as an agency or instrumentality of the township. *Id.* at 1237.

In extending agency or instrumentality status to the fire department, the court relied heavily on Indiana's comprehensive statutory treatment of volunteer firefighting. IND. CODE 36–8–12 establishes the specific methods for organization and creation of volunteer fire departments. Among other things, this chapter defines volunteer fire departments and volunteer firefighters. It also obligates municipalities that contract with volunteer fire departments to provide insurance, clothing, and automobile allowances to the volunteer firefighters who serve the municipality. *See id.* at 1235–36.[4] In the case at bar,

however, there is no statutory scheme creating garbage hauling companies.[5]

Chapter 31 of Title 36, Article 9 of the Indiana Code governs garbage removal in Indianapolis. The Board has authority over all matters relevant to garbage collection and disposal within Indianapolis. IND.CODE 36–9–31–3. It also has the authority to enter into contracts, including leases and sales, for many aspects of garbage collection, transport, and disposal. *Id.* Nowhere, however, does IC 36–9–31 purport to define or create garbage collecting companies. Unlike volunteer fire departments, Waste Management and other companies in the garbage industry are not Indiana statutory creations. Rather, like other independent contractors, "[t]hey are private businesses available to anyone requiring their services, either public or private, and at a charge for their services." *Ayres,* 493 N.E.2d at 1235. *See also Logestan v. Hartford Steam Bolier Inspection and Ins. Co.* (1993), Ind.App., 626 N.E.2d 829, 832 (statutory scheme allowed for both state and private boiler inspectors; private boiler inspectors are not state agencies or instrumentalities).

IC 6–2.5–5–16 grants an exemption from sales tax only to governmental agencies or instrumentalities. Waste Management is not a governmental agency or instrumentality. It is instead a private business, operating under contract with the Board, engaged in garbage collection and hauling. It is therefore not entitled to the exemption granted by IC 6–2.5–5–16.[6]

---

3. IND.CODE 34–4–16.5.

4. This statutory scheme remains largely unchanged today. *See* IC 36–8–12 (West 1993).

5. Although *Ayres* is a tort case, the court's analysis is nonetheless instructive in other contexts. IC 36–8–12 defines the status of volunteer fire departments and the relationship of those fire departments to the municipalities they serve. And while those definitions undoubtedly have tort ramifications, they are not specific to tort situations alone.

6. Because Waste Management is not a governmental agency or instrumentality, the court need not decide whether Waste Management performs a governmental function within the meaning of IC 6–2.5–5–16(2) when it collects, transports, and disposes of garbage. The court notes, however, that courts and learned authorities have

historically viewed garbage as a potential nuisance having deleterious effects on people's health and safety. *See, e.g., City of Indianapolis v. Ryan* (1937), 212 Ind. 447, 7 N.E.2d 974; *Jansen Farms v. Indianapolis* (1930), 202 Ind. 138, 171 N.E.199, *overruled in part on other grounds, Ryan,* 212 Ind. 447, 7 N.E.2d 974; 7 Eugene McQuillen, *The Law of Municipal Corporations* § 24.246 (rev. 3d ed. 1989). Therefore, it has long been within the general scope of municipal police power to control, regulate, and execute garbage removal and disposal. *See, e.g., id.* at §§ 24.245, 24.250; John F. Dillon, *Treatise on the Law of Municipal Corporations* § 93 (1st ed. 1872) (discussing municipal police power generally). *See also California Reduction Co. v. Sanitary Reduction Works of San Francisco* (1905), 199 U.S. 306, 26 S.Ct. 100, 50 L.Ed. 204; *Ryan,* 212 Ind. 447, 7 N.E.2d 974; *Vandine, Petitioner* (1828), 23 Mass. (6 Pick.) 187, 17 Am.Dec. 351. Unlike firefighting, however, garbage collection

## IV

■ Finally, Waste Management claims it provides public transportation of property within the meaning of IC 6–2.5–5–27 when it transports garbage to the disposal sites. The court agrees.

### A. "Property" within IC 6–2.5–5–27

■ IC 6–2.5–5–27 provides: "[t]ransactions involving tangible personal property and services are exempt from the state gross retail tax, if the person acquiring the property or service directly uses or consumes it in providing *public transportation for persons or property*." (Emphasis added). *See Calcar Quarries, Inc.*, 394 N.E.2d 939. Waste Management claims the garbage it hauls is "property." The Department responds that the garbage Waste Management hauls is not "property," but even if it were, it is Waste Management's property, and therefore cannot serve as the basis for exemption. Because IC 6–2.5–5–27 does not define "property," the court turns to the rules of statutory construction to determine the meaning of the word.[7]

■ The court gives all statutes, including exemptions, their plain, ordinary, and usual meaning. *Harlan Sprague Dawley*, 605 N.E.2d at 1225. In cases of ambiguity, the court strictly construes exemptions from tax against the taxpayer and in favor of the State. *Id.* In all cases, however, the court's foremost goal is to give effect to the intent of the legislature, and the court must be sure not to construe an exemption so narrowly its proper application is defeated. *Id.*

■ The word "property" is inherently ambiguous. On one hand, the law views "property" as a bundle of rights. "Generally, the word property in its legal sense means a valuable right or interest in a thing rather than the thing itself." *Meek v. State* (1933), 205 Ind. 102, 105, 185 N.E. 899, 901. *See also Black's Law Dictionary* (5th ed. 1979) 1095 (containing several similar statements). On the other hand, the word also refers to everything that is capable of being owned. *See id.; Webster's Third New International Dictionary* (1981) 1818. As our court of appeals has stated, "[p]roperty refers to physical objects. . . . It also encompasses the complex group of jural relations between the owner of the physical object and all other individuals." *In re Marriage of McDonald* (1981), Ind.App., 415 N.E.2d 75, 77 (citing *Nelson v. LaTourrette* (1961), 132 Ind.App. 584, 178 N.E.2d 67).

The court must construe the word's ambiguity against Waste Management. *See Harlan Sprague Dawley*, 605 N.E.2d at 1225. The Department rightly points out that "property," in its legal sense, refers to a "*valuable* right or interest." *Meek* at 105, 185 N.E. at 901 (emphasis added). Garbage, however, has traditionally been viewed as valueless, or so nearly valueless that any residual value was far outweighed by the

---

has also long been, and is still, performed as a for-profit enterprise by private businesses like Waste Management. *See The Law of Municipal Corporations, supra,* at § 24.251 (and cases cited therein).

7. The statute does not define "public transportation," either. The Department, however, has promulgated 45 I.A.C. 2.2–5–61 to interpret IC 6–2.5–5–27.

Public transportation shall mean and include the movement, transportation, or carrying of persons and/or property for consideration by a common carrier, contract carrier, household goods carrier, carriers of exempt commodities, and other specialized carriers performing public transportation service for compensation by highway, rail, air, or water, which carriers operate under authority issued by, or are *specifically exempt by statute or regulation from economic regulation of, the public service commission of Indiana . . .*

45 I.A.C. 2.2–5–61(b) (emphasis added). The Department replaced the Public Service Commission of Indiana as Indiana's motor carrier issuing authority several years ago. *See* IND.CODE 8–2.1–18–6. Be that as it may, Waste Management was specifically exempt from regulation because it operates in a limited geographical area. *See* IND.CODE 8–2–7–3(a), *repealed,* now IND.CODE 8–2.1–18–3. This exemption from regulation for "local" transport, found for many years in IC 8–2–7–3(a), was removed from IC 8–2–7–3's successor, IC 8–2.1–18–3, by P.L. 1991–1, § 74 and P.L. 1990–71, § 3. The effective date of the exemption's removal was March 20, 1990. P.L. 1990–71, § 3. Therefore, Waste Management cannot claim to be engaged in public transportation as an exempt carrier from March 20, 1990 forward. Any claim to the public transportation sales tax exemption since that date, then, must necessarily rest on another basis.

dangers its presence posed to the community. *See Ryan,* 212 Ind. 447, 7 N.E.2d 974; *Jansen Farms,* 202 Ind. 138, 171 N.E. 199; *Law of Municipal Corporations, supra,* § 24.247.[8] Whether garbage has value, however, is not the dispositive inquiry. Instead, the question is whether the word "property" in IC 6–2.5–5–27 is used in the legal sense or the physical.

IC 6–2.5–5–27 creates an exemption for *"public transportation for persons or property."* (Emphasis added). Simply put, rights and interests are incorporeal or intangible; they cannot be placed in a vehicle and moved from point A to point B. Only physical things are capable of being transported.

Moreover, the legislature chose to use the word "property" standing alone in the clause "public transportation for persons or property." Indiana imposes sales tax on retail transactions, IND.CODE 6–2.5–2–1, which almost exclusively involve the transfer of "tangible personal property" for consideration from a seller to a buyer. *See* IND. CODE 6–2.5–4–1; *Maurer,* 607 N.E.2d at 986–87. Therefore, the exemptions from sales tax are for certain transfers of "tangible personal property." *See generally* IND. CODE 6–2.5–5.[9] This includes IC 6–2.5–5–27: "Transactions involving *tangible personal property* and services are exempt from the state gross retail tax, if the person acquiring *the property* or service directly uses or consumes it in providing *public transportation for persons or property."* (Emphasis added).

█ The legislature, though, did not reiterate the phrase "tangible personal property" in the final clause. Instead, it used the word "property," standing alone.[10] Every legislative word choice is presumed to have been used intentionally and to have meaning. *Burks v. Bolerjack* (1981), Ind., 427 N.E.2d 887, 890 (and cases cited therein); *Indiana Dep't of Human Services v. Firth* (1992), Ind.App., 590 N.E.2d 154, 157, *trans. denied*

(citing *Evansville v. Int'l Ass'n of Fire Fighters, Local 357* (1987), Ind., 516 N.E.2d 57). The court therefore presumes the legislature intended "property" in the final clause to mean something in addition to "tangible personal property."

For example, stock certificates, debt instruments, and raffle tickets are all physical things, but their value usually stems from the intangible rights they represent. *See, e.g., Maurer,* 607 N.E.2d 985 (raffle ticket); *SFN Shareholders Grantor Trust,* 603 N.E.2d 194 (stock shares). Therefore, they are generally not "tangible personal property," but they are nonetheless physical "property" capable of being transported. Accordingly, the legislature did not limit the exemption to transportation of "tangible personal property," but extended it to transportation of "property."

█ Within the context of the public transportation exemption, to define "property" as anything other than a physical thing would essentially write the word out of the phrase and nullify the portion of the exemption for transportation of property: there can be no transportation of incorporeal or intangible things, only of physical or tangible things. The court must construe statutes to give meaning to every word and phrase and cannot presume the legislature intended to enact a nullity or a meaningless statute. *Monarch Steel Co. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 611 N.E.2d 708, 713 (citing *Hinshaw v. Board of Comm'rs* (1993), Ind., 611 N.E.2d 637, 638); *Maurer,* 607 N.E.2d at 987 (citing *Harlan Sprague Dawley,* 605 N.E.2d at 1225).

"Tangible personal property" is a term of art within the sales and use tax statutes, including IC 6–2.5–5–27. "Property," as used in IC 6–2.5–5–27, includes both "tangible personal property" and physical things like stock certificates that are not "tangible personal property." In other words, "prop-

---

8. The parties do not dispute that the matter Waste Management hauls is garbage within the statutory definition of solid waste found in IND. CODE 36–9–30–2 and 36–9–31–2.

9. Indiana imposes sales tax on a few services, such as telephone service, as well. These services are also exempt from sales tax in several

instances. *See generally* IND.CODE 6–2.5–4; 6–2.5–5.

10. The word "property" standing alone in the middle of the statute, introduced by a definite article, simply refers back to the "tangible personal property" in the opening clause.

erty," as used in IC 6–2.5–5–27, refers to a physical thing, not to a valuable right or interest in a thing. Because garbage is undisputedly a physical thing, it falls within the terms of the exemption.

### B. Ownership

Notwithstanding that garbage is property within the meaning of the statute, Waste Management must also show that the garbage is the property of another. 45 I.A.C. 2.2–5–61. *See Calcar Quarries, Inc.*, 394 N.E.2d 939. Waste Management claims the City of Indianapolis owns the garbage. The Department responds that no entity has greater ownership rights in the garbage than Waste Management, which has exclusive control over the garbage it hauls.

■■■ At the point the garbage is abandoned, the generators of the garbage lose their ownership rights and the Board's authority to handle the garbage takes effect. *See O'Neal v. Harrison* (1915), 96 Kan. 339, 341, 150 P. 551–52 (quoting 2 *Dillon on Municipal Corporations* § 678 (5th Ed.) (garbage is still "of value to the owner.... if [it] has not been rejected or abandoned as worthless ...").[11] Waste Management's possession, however, is not determinative of ownership because possession is not tantamount to ownership. *Reissner v. Oxley* (1881), 80 Ind. 580. Rather, it merely raises a rebuttable presumption of ownership. *See Abel v. Love* (1924), 81 Ind.App. 328, 143 N.E. 515 (discussing adverse possession). In addition to possession, "[t]he chief incidents of ownership ... are the rights of use and enjoyment, and of disposition." *Rhoades v. State* (1946), 224 Ind. 569, 70 N.E.2d 27, 29. Like "property," ownership is a malleable concept. *See Black's Law Dictionary, supra,* at 996–97.

At this stage of the litigation, Waste Management has not met its burden, which arises both because it seeks the exemption and because it seeks summary judgment, to show that ownership lies with the Board. Waste Management has deluged the court with reams of evidentiary materials that, taken together, are literally more than a foot thick. Waste Management has made some vague attempts to point to the materials it relies on, but for the most part, these attempts have simply led the court to one very long document instead of several. Because the Department also seeks summary judgment, it too bears the burden to prove its case. T.R. 56(C); *Hermann v. Yater* (1994), Ind.App., 631 N.E.2d 511, 513. But like Waste Management, the Department has not revealed with specificity the evidence to support its claim that Waste Management owns the garbage.

■■■ In *Rosi,* 615 N.E.2d 431, our supreme court made eminently clear the evidentiary obligations in a summary judgment proceeding: it is not the role of either the trial court or the reviewing court to make a party's case or to find the evidence supporting that case. *Id.* at 434. That obligation lies solely with the parties. In the present case, neither movant has fulfilled its obligation. There remain genuine issues of material fact concerning the ownership of the garbage Waste Management transports.[12]

### CONCLUSION

Waste Management does not use its equipment within the meaning of IC 6–2.5–5–3, the equipment exemption, or IC 6–2.5–5–30, the environmental quality exemption. Moreover, Waste Management is neither an agency nor an instrumentality of the City of Indianapolis under IC 6–2.5–5–16. It is therefore not entitled to those exemptions and the court GRANTS summary judgment to the Department on those questions. There is no just reason for delay on these questions, and they are expressly entered as final judgments.

---

11. The court's discussion has no bearing on the issue of searches and seizures of garbage. The United States Supreme Court has addressed that issue and held that a warrantless search and seizure of garbage, left for collection outside the curtilage of a residence, does not violate the Fourth Amendment to the United States Constitution. *California v. Greenwood* (1988), 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30.

12. There are also genuine issues of material fact surrounding the question of Waste Management's status from March 20, 1990 forward, as discussed in footnote 7, *supra.*

The exemption for public transportation of "property" under IC 6–2.5–5–27 refers to physical things, not rights or interests. The garbage Waste Management transports is a physical thing and therefore falls within the ambit of the exemption. The court therefore GRANTS partial summary judgment to Waste Management on this question: garbage is "property" within the meaning of IC 6–2.5–5–27. There are still genuine issues of material fact, however, as to whether Waste Management or another person/entity owns the garbage it transports. The court therefore DENIES summary judgment to both the Department and Waste Management on this question.