**NATIONAL SERV–ALL, INC., and National Serv–All, Inc., d/b/a Zent's, Petitioners,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 02T10–9202–TA–00005.

Tax Court of Indiana.

Dec. 19, 1994.

Jay M. DeVoss, Harry W. Scott, Scott B. Ainsworth, DeVoss, Scott, Johnson & Baker, Decatur, for petitioners.

Pamela Carter, Atty. Gen., Joel Schiff, Thomas K. Caldwell, Deputy Attys. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioners, National Serv–All, Inc., and National Serv–All, Inc., d/b/a Zent's, (collectively, National), appeal the assessment of gross retail (sales) and use tax by the Respondent, the Indiana Department of State Revenue (the Department), for calendar years 1986, 1987, and 1988 (the years at issue).

### ISSUES

I. Whether National is entitled to the sales tax exemption available to governmental agencies and instrumentalities under IND.CODE 6–2.5–5–16.

II. Whether National has met its burden of proof in showing that it is entitled to the sales tax exemption for public transportation of property under IND.CODE 6–2.5–5–27.

## FACTS

National, an Indiana for-profit corporation, operates a garbage hauling business in the Fort Wayne area. During the years at issue, National, the successful bidder in a competitive bidding process, operated under an agreement (the Contract) with the Fort Wayne Board of Public Works (the Board). Under the Contract, National picked up garbage from residential and municipally owned sites and transported it to a landfill owned by National. The Contract established compensation rates, garbage pick-up times and locations, and other rights and obligations.

During the same period of time, National also hauled garbage under agreements with individual residential and business generators of garbage in areas near the area covered by the Contract. National used the same trucks for its Contract and non-Contract work. Accordingly, none of National's trucks were exclusively devoted to work under the Contract. National owned and repaired its own trucks and also repaired others' trucks.

## DISCUSSION AND DECISION

### Standard of Review

■ The court reviews appeals from final determinations of the Department *de novo* and is not bound by the evidence or the issues raised at the administrative level. *Maurer v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 607 N.E.2d 985, 986. When an appeal involves a claim for exemption, as does the case at bar, the taxpayer bears the burden to show it falls within the terms of the exemption. *See id.* If the exemption is ambiguous, the court must resolve the ambiguity in favor of the Department. *See Shoup*

*Buses, Inc. v. Indiana Dep't of Revenue* (1994), Ind.Tax, 635 N.E.2d 1165, 1168.

### I

■ National first claims it is entitled to the benefits of I.C. 6–2.5–5–16, the sales tax exemption applicable to agencies or instrumentalities of the State of Indiana and its political subdivisions. In *Indiana Waste Systems of Indiana, Inc. v. Indiana Department of State Revenue* (1994), Ind.Tax, 633 N.E.2d 359, this court addressed an identical claim by a garbage hauler that operated under contract with the Indianapolis Board of Public Works. Applying the Indiana Supreme Court's analysis in *Ayres v. Indian Heights Volunteer Fire Department, Inc.* (1986), Ind., 493 N.E.2d 1229, the court rejected the notion that the garbage hauler was a governmental agency or instrumentality. *Indiana Waste,* 633 N.E.2d at 364.

In *Ayres,* our supreme court extended agency or instrumentality status to a volunteer fire department, relying largely on the comprehensive statutory scheme that creates volunteer fire departments and defines their relationships to the municipalities they serve. *Ayres,* 493 N.E.2d at 1235–36. Unlike the volunteer fire department in *Ayres,* however, the garbage hauler in *Indiana Waste* was not a statutory creation, but rather a private business. *Indiana Waste,* 633 N.E.2d at 364. Furthermore, while the statutes governing solid waste disposal in Indianapolis, contained in IND.CODE 36–9–31, were broad in scope and gave the Indianapolis Board of Public Works "authority over all matters relevant to garbage collection and disposal within Indianapolis ... [they did not] purport to define or create garbage collecting companies." *Id.*

The statutes governing solid waste disposal outside Indianapolis, IND.CODE 36–9–30,[1] are also broad in scope. They give the Board authority to contract for solid waste removal[2] and all other necessary and incidental functions in the discharge of its

1. I.C. 36–9–30 "applies to all units except townships." IND.CODE 36–9–30–1. I.C. 36–9–31 "applies to each consolidated city." IND.CODE 36–9–31–1. IND.CODE 36–9–30–2 defines "solid waste" for both I.C. 36–9–30 and I.C. 36–9–31,

and there is no dispute that the garbage National hauled falls within the statutory definition.

2. IND.CODE 36–9–30–5.

duties.[3] They also define permissible disposal methods,[4] allow the city and other governmental units to issue revenue bonds[5] and enter into leases,[6] and allow the Board to operate solid waste disposal facilities.[7] As with the statutes applicable to Indianapolis, however, I.C. 36–9–30 nowhere "purport[s] to define or create garbage collecting companies." *Indiana Waste,* 633 N.E.2d at 364. Therefore, National, like the garbage hauler in *Indiana Waste,* is not a governmental agency or instrumentality and is not entitled to the benefits of IC 6–2.5–5–16.

## II

National also claims it engaged in public transportation of property within the meaning of I.C. 6–2.5–5–27, which provides: "[t]ransactions involving tangible personal property and services are exempt from the state gross retail tax, if the person acquiring the property or service directly uses or consumes it in providing *public transportation for persons or property.*" (Emphasis added). The Department responds that the garbage National carries is valueless and therefore does not constitute "property." Nevertheless, the court rejected an argument nearly identical to this in *Indiana Waste,* as it held that the word "property," as used in the emphasized portion of I.C. 6–2.5–5–27, "refers to a physical thing, not to a valuable right or interest in a thing." *Indiana Waste,* 633 N.E.2d at 366–67. "Because garbage is undisputedly a physical thing, it falls within the terms of the exemption." *Id.* at 367.

Thus, the next question is whether National's hauling of garbage constitutes *"public transportation"* within the meaning of the statute. The public transportation exemption requires that the transporter perform its function for consideration. *See State Dep't of Revenue v. Calcar Quarries, Inc.* (1979), 182

Ind.App. 84, 394 N.E.2d 939; 45 I.A.C. 2.2–5–61.[8] In other words, someone other than the transporter must own the property being transported.

In *Calcar,* the taxpayer, Calcar, operated a construction and stone quarry business. Operating under permit from the PSC, Calcar used trucks to haul road building materials, stone, and equipment. Calcar kept its records for the trucking operation separate from those of its quarrying and other operations. While Calcar used the trucks to haul both its own stone and stone it sold to customers, the stone Calcar hauled for its own purposes "amounted to no more than ten percent of its crushed stone sales." *Calcar,* 182 Ind.App. at 87, 394 N.E.2d at 941. Because uncontroverted evidence revealed that Calcar predominantly used the trucks to haul its customers' property for consideration, it was entitled to the public transportation exemption: as the court noted in a footnote, the Department allowed exemption for items predominantly used for exempt purposes. *Id.,* n. 1 (and accompanying text).

In the present case, then, the issue becomes whether National owns the garbage it hauls, for if National is predominantly engaged in hauling its own product, it is not entitled to the public transportation exemption. National claims that the garbage it hauls under the terms of the Contract is owned by the Board. The Department counters, however, that National, by virtue of its exclusive possession from the time of pickup, has better claim than anyone else.

In *Indiana Waste,* the court discussed possession and other factors relevant to determining ownership:

> At the point the garbage is abandoned, the generators of the garbage lose their ownership rights and the Board's authority to handle the garbage takes effect. *See*

3. IND.CODE 36–9–30–8.

4. IND.CODE 36–9–30–4.

5. IND.CODE 36–9–30–17.

6. IND.CODE 36–9–30–24.

7. IND.CODE 36–9–30–11.

8. During the years at issue, the threshold requirement under 45 I.A.C. 2.2–5–61 for entitle-

ment to the public transportation exemption was a certificate of authority from the Public Service Commission of Indiana (the PSC), or a specific exemption from PSC authority. *See Indiana Waste,* 633 N.E.2d at 365, n. 7. Because National operates in a limited geographic area, it is therefore specifically exempt from PSC regulation. *See id.*

*O'Neal v. Harrison* (1915), 96 Kan. 339, 341, 150 P. 551–52 (quoting 2 *Dillon on Municipal Corporations* § 678 (5th Ed.) (garbage is still "of value to the owner.... if [it] has not been rejected or abandoned as worthless ...").... [P]ossession, however, is not determinative of ownership because possession is not tantamount to ownership. *Reissner v. Oxley* (1881), 80 Ind. 580. Rather, it merely raises a rebuttable presumption of ownership. *See Abel v. Love* (1924), 81 Ind.App. 328, 143 N.E. 515 (discussing adverse possession). *In addition to possession, "[t]he chief incidents of ownership ... are the rights of use and enjoyment, and of disposition."* Rhoades v. State (1946), 224 Ind. 569, 70 N.E.2d 27, 29. Like "property," ownership is a malleable concept. *See Black's Law Dictionary,* [ (5th ed. 1979) ] 996–97.

*Indiana Waste,* 633 N.E.2d at 367 (emphasis added) (footnote omitted).

■ To demonstrate where the "chief incidents of ownership" lie, the parties have submitted the Contract between National and the Board. In reviewing the Contract, the court follows the rules of contract construction. Like the language of a statute, the language of a contract is generally given its plain and ordinary meaning, unless the contract makes clear the parties intended a different meaning. *Whiteco Indus., Inc. v. Nickolick* (1991), Ind.App., 571 N.E.2d 1337, 1339–40 (citing *Underwriting Members of Lloyds of London v. United Home Life Ins. Co.* (1990), Ind.App., 549 N.E.2d 67, *aff'd* (1990), Ind., 563 N.E.2d 609). "In construing a contract [the court] must be guided by the intent of the parties and ordinarily that intent is determined by examining the four corners of the written document." *Kutche Chevrolet–Oldsmobile–Pontiac–Buick, Inc. v. Anderson Banking Co.* (1992), Ind.App., 597 N.E.2d 1307, 1309.

The Contract consists of eleven separate documents and is comprehensive in scope, covering bid bonds, performance bonds, releases from liability, compensation, incentive rewards, pickup schedules, disposal criteria, and a host of other elements defining National's relationship with the Board. Throughout the Contract, the parties clearly express their intent regarding ownership of the garbage. Beginning with its first element, the Notice to Bidders, and continuing without exception, the Contract defines the Board as the "Owner," with respect to both municipal and residential garbage. *Petitioner's Exhibit 2* at 4, 5, 7, 13, 16, 19. An "owner" is "[t]he person in whom is vested the ownership, dominion, or title of property." *Black's Law Dictionary* 996 (5th ed. 1979). At the same time, the Contract defines National as the "Contractor." *Petitioner's Exhibit 2* at 16. The word "contractor" generally refers to "one who, for a fixed price, undertakes to procure the performance of works or services on a large scale ..." *Black's Law Dictionary* 295 (5th ed. 1979). Moreover, the Board, not National, determined the disposition of the garbage. *Petitioner's Exhibit 2* at 30. As stated earlier, the right of disposition is one of the indications of ownership. *See Indiana Waste,* 633 N.E.2d at 367 (citing *Rhoades v. State* (1946), 224 Ind. 569, 70 N.E.2d 27, 29).

The import of the Contract is both clear and unmistakable. The Board, as "owner," controlled the disposition of the garbage that its "contractor," National, carried. Thus, the chief incidents of ownership lie with the Board. Accordingly, the Board, and not National, owned the garbage transported under the Contract.[9] This does not resolve the case, however, because, as already discussed, National also carried garbage for persons outside the Contract area. Because the record contains no written agreements between National and its other customers, or any related testimony, the court must look elsewhere to resolve the ownership question.

Whether garbage is incinerated, buried, or disposed of by some other means, it starts

---

9. The Board's authority under I.C. 36–9–30 is broad, and there is no prohibition on its ability to acquire title to abandoned residential garbage. "It seems to be well settled by a heavy weight of authority that municipalities have power to control the disposal of garbage...." *Brandel v.* Civil City of Lawrenceburg (1967), 249 Ind. 47, 51–52, 230 N.E.2d 778, 781. *See also Indiana Waste,* 633 N.E.2d at 364, n. 6. That the Board chose to exercise its power by acquiring ownership of the garbage in question is not a matter for the court to second-guess.

out as something other than garbage, and someone has title to it. In normal residential terms, a homeowner owns property that, for various reasons, loses its usefulness and is discarded. There is no question that title to the property passes as part of the discard process; the only questions are "when, and to whom, does title pass?"

Because of the unique nature of garbage, a ubiquitous item disdained by most as useless, but prized by a few as fill or fuel, and presenting substantial public health hazards, the question of title to garbage is one that has led to a split of authority. The cases involving the garbage hauling industry generally focus on whether a garbage hauler is subject to the authority of a state's motor carrier regulatory agency.

One group of cases holds a garbage hauler is not subject to regulation because garbage is not "property." "Its character as 'property' ... [is] lost when the owner determine[s] to throw it out. This trash is totally unlike all other property hauled by either common or private carriers. It has been abandoned." *Visco v. State ex rel. Pickrell* (1963), 95 Ariz. 154, 166, 388 P.2d 155, 163. *See also Fairchild v. United Serv. Corp.* (1948), 52 N.M. 289, 197 P.2d 875; *Moore Industrial Disposal, Inc. v. City of Garland* (1979), Tex.Ct. App., 587 S.W.2d 430, *error refused, n.r.e.*

Another group of cases holds that garbage is property, but that ownership is irrelevant because garbage traveling over roads places just as much burden on those roads as any other property, and motor carrier regulation, at least in part, relates to road maintenance. *See Browning–Ferris, Inc. v. Commonwealth* (1983), 225 Va. 157, 161, 300 S.E.2d 603, 605 ("The critical factor in this operation is the service performed in collecting and disposing of the waste, not the ownership of the debris."); *Northern Hills Sanitation, Inc. v. Cossart* (1978), S.D., 264 N.W.2d 711, 713 ("As far as the wear and tear on our highways is concerned, it would seem to matter little whether a motor vehicle is carrying twenty tons of garbage or twenty tons of caviar."). *See also Drake v. Fairbanks North Star Borough* (1986), Alaska, 715 P.2d 1167, 1169 (municipality could not deprive state licensed garbage collector/disposer of

the benefits of its license by claiming it owned the garbage that residents dumped at municipal facility; ownership was irrelevant).

Finally, there are those cases that hold that garbage is property and make an express determination of ownership. The most often cited case in this group is *Masgai v. Public Service Commission* (1936), 124 Pa.Super. 370, 188 A. 599. In *Masgai*, the Pennsylvania Superior Court held that garbage was property and that the generator retains ownership until the garbage is destroyed.

> Although the owner of such materials [i.e., garbage] may regard them as of no value, still the right to their possession and the need for their disposal are within the control of the individual owner. All of these materials have certain valuable uses under varied circumstances, and even though the owner desires to dispose of or destroy such materials, the right of property continues until disposed of or destroyed. In performing such disposal service, [the hauler] was clearly engaged in the business of a common carrier.

*Id.* at 375, 188 A. at 600–01. At the other end of the spectrum is *New Hampshire Public Utilities Commission v. Naughton* (1978), 118 N.H. 750, 394 A.2d 311. In *Naughton*, the New Hampshire Supreme Court held that, in some circumstances, the hauler owns the garbage:

> "To the homeowner, the garbage has a negative value and he impliedly relinquishes any interest therein to the collector and pays him to carry it away. The collector is then carrying his own property ... The homeowner doesn't care where the collector takes the garbage or what he does with it. This being so, the collector is not engaged in [public] transportation.

*Id.* at 753, 394 N.E.2d at 313.

Having already held in *Indiana Waste* that garbage is property within the meaning of I.C. 6–2.5–5–27, a further review of these authorities leads the court to conclude that *Naughton* represents the better view as to

ownership.[10]  It is little more than a fiction to view the generator of non-hazardous garbage [11] as retaining property rights in the garbage until the hauler disposes of it or destroys it.  From the homeowner's perspective, the garbage is disposed of when the hauler removes it.  At that point, absent an agreement like National's Contract with the Board, ownership of the garbage passes to the hauler.  Moreover, even if title is viewed as remaining in the homeowner, title alone is not necessarily dispositive.  *See Meridian Mortgage Co. v. State* (1979), 182 Ind.App. 328, 339, 395 N.E.2d 433, 439–40.

In *Meridian Mortgage,* our court of appeals analyzed title, possession, and control as the indicia of ownership of personalty.  *Id.*  The court first noted that stockbrokers and trustees hold legal title to property they do not own.  *Id.* at 339, 395 N.E.2d at 440.  As for possession, as the Department rightly points out in this case, National has exclusive possession of the garbage during hauling: no other entity shares possession.  Last, there is the question of "control, which includes the right to sell, dispose of, or transfer."  *Id.* at 339, 495 N.E.2d at 439.  As stated above, the homeowner exercises the right to dispose of the trash at the time the hauler removes it.  Thus, from the moment the hauler removes the garbage, control lies with the hauler, who is not answerable to the homeowner for its actions.[12]

As the court stated in *Indiana Waste,* "in addition to possession, '[t]he chief incidents

of ownership . . . are the rights of use and enjoyment, and of disposition.'"  *Indiana Waste,* 633 N.E.2d at 637 (quoting *Rhoades v. State* (1946), 224 Ind. 569, 70 N.E.2d 27, 29).  When a homeowner relinquishes all these incidents, the hauler acquires them.  Consequently, when National carried non-Contract garbage, it was carrying its own property and was not engaged in "public transportation" within the meaning of the exemption.  The only remaining question, then, is whether National predominantly used its trucks and other items, for which it seeks exemption, hauling Contract or non-Contract garbage.  If it predominantly hauled Contract garbage, it is entitled to the exemption; if it predominantly hauled non-Contract garbage, it is not.

Because National seeks an exemption, it bears the burden of proof to show it falls within the terms of the exemption.  *Maurer,* 607 N.E.2d at 986.  Although there is no dispute that National hauled both Contract and non-Contract garbage, there is no evidence indicating what portion of National's total business was devoted to hauling Contract garbage and non-Contract garbage.  While National engaged in "public transportation" when it hauled Contract garbage, it has not proven that its hauling of Contract garbage was the *predominant share* of its use of the items at issue.  Thus, National has not met its burden and is therefore not entitled to the exemption.  *See Calcar,* 182 Ind. App. at 88, 394 N.E.2d at 941.

---

**10.**  *Masgai* was not the first case to address the relevance of ownership to status within a motor carrier type statute.  *See, e.g., City of Sioux Falls v. Collins* (1920), 43 S.D. 311, 178 N.W. 950 (truck used by baker delivering his own products for subsequent sale to customers was not a vehicle for hire or rent).  *Masgai* was, however, the first case to discuss ownership of garbage in the context of the modern garbage hauling industry.  It has therefore been cited frequently on the question of whether garbage is property.  *See Schlagel v. Hoelsken* (1967), 162 Colo. 142, 425 P.2d 39, *cert. denied,* 389 U.S. 827, 88 S.Ct. 81, 19 L.Ed.2d 83; *Northern Hills Sanitation, Inc.,* 264 N.W.2d 711; *R.R. Comm'n v. Waste Management of Texas* (1994), Tex.Civ.App., 880 S.W.2d 835; *Browning–Ferris, Inc.,* 225 Va. 157, 300 S.E.2d 603; *State v. Diamond Tank Transport, Inc.* (1939), 2 Wash.2d 13, 97 P.2d 145 (all holding that garbage is property); *contra, Visco,* 95 Ariz. 154, 388 P.2d 155; *Fairchild,* 52 N.M. 289, 197 P.2d 875; *Moore Industrial Disposal,*

587 P.2d 430 (all holding garbage is not property).

For varying reasons, none of these cases follow the holding in *Masgai* that not only does garbage constitute property, but that it remains the homeowner/generator's property until the hauler finally disposes of it.  For the reasons stated in the text, this court also declines to follow *Masgai* on the question of ownership.

**11.**  For a discussion on hazardous waste, *see* 42 U.S.C. § 9601 *et seq.*

**12.**  The hauler, of course, lacks the authority to take any illegal action with respect to the use, disposal, or transfer of the garbage, *see, e.g.,* IND.CODE 13–7–4, but that is also a truism that applies to owners and their property generally.  *Vis a vis* the homeowner, who has relinquished all rights, the hauler has full control.

## CONCLUSION

National is not a governmental agency or instrumentality within the meaning of I.C. 6–2.5–5–16. Although National engaged in the public transportation of property within the meaning of· I.C. 6–2.5–5–27 when it hauled Contract garbage, it did not prove it predominantly engaged in public transportation. National is therefore not entitled to the benefits of the public transportation exemption. Accordingly, the Department's final determination is in all things AFFIRMED.