**INDIANA WASTE SYSTEMS OF INDIANA, INC., d/b/a Waste Management of Indianapolis, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9201–TA–00004.

Tax Court of Indiana.

Dec. 19, 1994.

James E. Freeman, Jr., John W. Longnaker, III, Sansberry Dickmann Freeman & Builta, Anderson, for petitioner.

Pamela Carter, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Indiana Waste Systems of Indiana, Inc., d/b/a Waste Management of Indianapolis (Waste Management), brought this appeal after the Respondent, the Indiana Department of State Revenue (the Department) failed to act on Waste Management's claim for refund.[1] The matter is now before the court on Waste Management's second motion for summary judgment under Ind.Trial Rule 56.

### BACKGROUND

Waste Management seeks the benefits of the public transportation exemption[2] from the gross retail and use tax. The court previously granted summary judgment in part and denied summary judgment in part to both Waste Management and the Depart-

---

1. *See* IND.CODE 6–8.1–9–1(c).

2. IND.CODE 6–2.5–5–27.

ment in *Indiana Waste Systems of Indiana, Inc. v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 633 N.E.2d 359 (*Indiana Waste I* ).

Waste Management hauls garbage generated in Indianapolis under a contract (the Contract) with the Indianapolis Board of Public Works (the Board). Waste Management also hauls garbage from nearby areas for individual residential and business generators of garbage. Waste Management has only one set of trucks which it uses for both Contract and non-Contract work. As a result, none of Waste Management's trucks are used exclusively for Contract work.

At the November 22, 1994, hearing on Waste Management's summary judgment motion, the Department offered, and the court admitted, without objection, a corrected answer to an interrogatory from the Department to Waste Management. The corrected answer states that Waste Management never received more than 17.7 percent of its annual revenue from its work under the Contract during the years at issue. *Respondent's Exhibit A.*

Waste Management claims that its business of hauling garbage amounts to the public transportation of property and that therefore the trucks and other items it uses are exempt under I.C. 6–2.5–5–27. In *Indiana Waste I,* the court held that the garbage Waste Management carries is "property" within the meaning of I.C. 6–2.5–5–27, which provides: "[t]ransactions involving tangible personal property and services are exempt from the state gross retail tax, if the person acquiring the property or service directly uses or consumes it in providing *public transportation for persons or property.*" *Indiana Waste I,* 633 N.E.2d at 366–67 (emphasis added).

## ISSUE

The sole issue now before the court is whether Waste Management is predominantly engaged in public transportation when it hauls garbage. In an opinion handed down contemporaneously with this one, the court

resolves this question against Waste Management's position. *See National Serv–All, Inc. v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 644 N.E.2d 954.

## DISCUSSION AND DECISION

Summary judgment is appropriate only when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Indiana Waste I,* 633 N.E.2d at 362. The court may grant summary judgment in favor of either the movant or the non-movant. *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1224.

As the court discussed in *National Serv–All,* to be entitled to the public transportation exemption, a carrier[3] must "perform its function for consideration." *National Serv–All,* 644 N.E.2d at 956. *See also State Dep't of Revenue v. Calcar Quarries, Inc.* (1979), 182 Ind.App. 84, 394 N.E.2d 939; 45 I.A.C. 2.2–5–61. That is, the carrier must not own the property being transported. *Id.* at 956. If the carrier is not predominantly engaged in transporting property of another, it is not entitled to the exemption. *Id.* Absent an agreement between a garbage generator and a garbage hauler reserving ownership in the generator, ownership of the garbage passes when the hauler removes the garbage from the generator. *Id.* at 958–59.

In the present case, Waste Management first makes the general claim that the thrust of IND.CODE 36–9–30 and 36–9–31, which govern the collection and disposal of garbage around the state and in Indianapolis, respectively, is to create municipal ownership of all garbage upon disposal by the generator. Although both chapters do give boards of public works broad authority and duties, *see National Serv–All,* 644 N.E.2d at 955; *Indiana Waste I,* 633 N.E.2d at 364, they do not state or imply that all garbage automatically passes into municipal ownership.

---

**3.** *See Indiana Waste I,* 633 N.E.2d at 365, n. 7 (discussing 45 I.A.C. 2.2–5–61, which lists the types of carriers able to seek the exemption).

Waste Management also argues that various Indianapolis ordinances, as well as the terms of the Contract, give the Board ownership of the garbage hauled under the Contract. Assuming *arguendo* that this is correct, Waste Management is still not entitled to the exemption.

■ Like the taxpayer in *National Serv–All*, Waste Management has no agreement with its individual customers reserving ownership of the garbage in those customers. As a result, Waste Management owns the garbage it removes from its customers. Furthermore, Waste Management's answer to the Department's interrogatory reveals that Waste Management never received, in any year, more than 17.7 percent of its income from its work under the Contract. The question of Waste Management's predominant use of its equipment is the only material factual question in this case, and there is no genuine issue as to this fact. Waste Management's maximum annual revenue from public transportation was 17.7 percent of its total revenue, and therefore, the remaining 80

plus percent of its revenue came from non-public transportation. The predominant use [4] of Waste Management's trucks and other items, therefore, is not exempt, and Waste Management is not entitled to the public transportation exemption.

### CONCLUSION

Waste Management's answers to the Department's interrogatories undisputedly reveal that Waste Management is predominantly engaged in non-public transportation. Therefore, even though garbage is property within the meaning of I.C. 6–2.5–5–27, Waste Management is not entitled to the public transportation exemption from the gross retail and use tax.

---

4.  Furthermore, even viewing predominant use in terms of time or volume, Waste Management has admitted it has no records to show the breakdown of either the time its trucks are devoted to Contract work or the volume of Contract garbage its trucks haul. *Respondent's Exhibit A.* There-

fore, Waste Management cannot meet the burden it bears to show that it falls within the terms of the exemption. *See National Serv–All*, 644 N.E.2d at 959 (discussing the burden of proof in exemption cases).