CARNAHAN GRAIN, INC., Petitioner,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T10–0403–TA–14.

Tax Court of Indiana.

June 1, 2005.

N. Kent Smith, Christopher C. Eades, James M. Shafer, Hall, Render, Killian, Heath & Lyman, P.S.C., Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Amber Merlau St. Amour, Deputy

Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

Carnahan Grain, Inc. (Carnahan) appeals the final determination of the Indiana Department of State Revenue (Department) assessing it with additional sales and use tax for the 1999 and 2000 tax years (years at issue). The matter is currently before the Court on the parties' cross-motions for summary judgment. The issue for the Court to decide is whether Carnahan is entitled to a public transportation exemption for equipment it predominantly uses to transport agricultural commodities owned by third parties.

## FACTS AND PROCEDURAL HISTORY

Carnahan is a grain and agricultural commodities dealer located in Edwardsport, Indiana. A significant portion of Carnahan's operations is devoted to the public transportation of agricultural commodities. Specifically, Carnahan hauls tomato freight, tomato plant freight and other tomato products for Red Gold Farms, Inc., as well as crops for other third parties such as the Hammelman and Lenderman Farms. Although Carnahan is primarily engaged in the transportation of commodities owned by third parties, it also transports some of its own property.[1]

In 2002, the Department completed an audit of Carnahan, determining that Carnahan owed use tax on the following items: semi-tractors, flatbed trailers, tub containers for tomatoes, truck repair parts and supply items, diesel fuel, a grader, a skid loader, repair parts for the skid loader, and tools.[2] The Department issued proposed assessments of $11,392.27, plus interest and a 10% negligence penalty for the 1999 tax year, and $14,531.35, plus interest and a 10% negligence penalty for the 2000 tax year.

Carnahan protested the assessments and the Department held a hearing on August 7, 2003. On September 18, 2003, the Department issued a Letter of Findings denying Carnahan's protest. Carnahan's subsequent request for rehearing was also denied.

On March 15, 2004, Carnahan initiated an original tax appeal. The parties filed cross-motions for summary judgment on January 31, 2005. The Court conducted a hearing on the parties' motions on May 2, 2005. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court reviews the Department's determinations de novo. IND.CODE

---

1. Based upon total miles traveled, Carnahan hauled property owned by third parties 82% of the time during the 1999 tax year and 72% of the time during the 2000 tax year.

2. The Department also determined that Carnahan owed use tax on an automobile, gasoline, and other supply items. In addition, it determined that Carnahan was liable for sales tax on rental payments it received from Michael Carnahan, president of the company, for the rental of pickup trucks. Although Carnahan initially included these items in its protest, it subsequently withdrew its protest with respect to these items. (See [Pet'r] Br. in Resp. to [Resp't] Mot. for Summ. J. at 7 n. 1; see also Hr'g Tr. at 7–8, 35–36.) Specifically, the items withdrawn by Carnahan are designated as items "J" and "K" in Carnahan's reply to the Department's response brief. (See [Pet'r] Reply to [Resp't] Resp. to Mot. for Summ. J. at 2; see also Pet'r Ex. A.) Accordingly, the Court GRANTS the Department's motion for summary judgment with respect to these items.

ANN. § 6–8.1–5–1(h) (West 2005). Therefore, the Court is bound by neither the evidence presented nor the issues raised at the administrative level. *Snyder v. Indiana Dep't of State Revenue*, 723 N.E.2d 487, 488 (Ind. Tax Ct.2000), *review denied.* A motion for summary judgment will be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Snyder*, 723 N.E.2d at 488.

## DISCUSSION

■ Indiana imposes a state gross retail tax ("sales tax") on "retail transactions made in Indiana." IND.CODE ANN. § 6–2.5–2–1(a) (West 1999). Indiana also imposes a use tax—which is the functional equivalent of the sales tax—on the acquisition of certain non-exempt tangible personal property that escapes sales tax, usually because the property was acquired in a transaction that occurred outside of Indiana. *See* IND. CODE ANN. § 6–2.5–3–2(a) (West 1999). *See also Rhoade v. Indiana Dep't of State Revenue*, 774 N.E.2d 1044, 1047–48 (Ind. Tax Ct.2002).

■ Indiana Code § 6–2.5–5–27 provides that "[t]ransactions involving tangible personal property and services are exempt from the state gross retail tax, if the person acquiring the property or service directly uses or consumes it in providing public transportation for persons or property." [3] IND.CODE ANN. § 6–2.5–5–27 (West 1999) (footnote added). A carrier provides public transportation when it "move[s], transport[s], or carr[ies][ ] persons and/or property *for consideration.*" IND. ADMIN. CODE tit. 45, r. 2.2–5–61 (1996) (emphasis added). Accordingly, in order to be entitled to the public transportation exemption, a taxpayer must be predominantly engaged in transporting the property of another, rather than its own property. *See Meyer Waste Sys., Inc. v. Indiana Dep't of State Revenue*, 741 N.E.2d 1, 5 (Ind. Tax Ct.2000), *review denied.*

■ Carnahan argues that it is entitled to the public transportation exemption for the use of its tractor-trailers and related equipment during the years at issue. The Department concedes that this equipment was predominantly used in transporting property for third parties. (*See* [Resp't] Br. in Supp. of its Mot. For Summ. J. at 7 (hereinafter "Resp't Br.").) Nevertheless, the Department argues that Carnahan is not entitled to the public transportation exemption because it is not, *as a business,* predominantly engaged in transporting property for third parties.[4] (*See* Resp't Br. at 7–8) (footnote added).

According to the Department, this Court's decision in *Panhandle Eastern Pipeline Co. v. Indiana Department of State Revenue* requires it to look at both the use of the property *and* the business of the taxpayer as a whole in determining predominant use. Specifically, the Department claims that the Court set forth a two-prong test when it stated:

> If a taxpayer acquires tangible personal property for predominate use in provid-

---

3. Likewise, tangible personal property is exempted from the use tax if the property was acquired in a transaction that is wholly or partially exempt from the sales tax under any part of Indiana Code § 6–2.5–5, including the public transportation exemption set forth by Indiana Code § 6–2.5–5–27. *See* IND.CODE ANN. § 6–2.5–3–4(a)(2) (West 1999).

4. The Department argues that Carnahan received only approximately 22% of its total income from the hauling of third parties' property during the years at issue. (*See* [Resp't] Br. in Supp. of its Mot. for Summ. J. at 7–8.)

ing public transportation for third parties, then it is entitled to the exemption. If a taxpayer is not predominately engaged in transporting the property of another, it is not entitled to the exemption.

*Panhandle E. Pipeline Co. v. Indiana Dep't of State Revenue,* 741 N.E.2d 816, 819 (Ind. Tax Ct.2001), *review denied.* Under the Department's reading of *Panhandle,* therefore, a taxpayer is required to: (1) predominantly use the property for third-party hauling; and (2) be predominantly engaged, *as a business,* in hauling for third parties. (*See* Resp't Br. at 7.) The Department, however, has misinterpreted *Panhandle.*

In *Panhandle,* the sole issue before the Court was whether a taxpayer engaged in hauling for both itself and third parties was entitled to a 100% exemption, rather than a partial exemption based on the percentage of predominant use. *See Panhandle,* 741 N.E.2d at 817. This Court held that the public transportation exemption is an all-or-nothing exemption; therefore, if a taxpayer's property is predominantly used for hauling third-party property, the taxpayer is entitled to a 100% exemption despite the fact that the property is also used for non-exempt purposes. *See id.* at 819.

Nowhere in the *Panhandle* opinion did the Court address whether Panhandle, as a business, was predominantly engaged in providing public transportation for third-party property. Rather, the Court only looked at Panhandle's *use* of the property for which it claimed the exemption. *See id.* Satisfied that the property was predominantly used to provide transportation for third parties, the Court held that Panhandle was entitled to the exemption. *See id.* In other words, the Court's holding rested entirely on Panhandle's use of the property.

■ Accordingly, when read in context with the rest of the *Panhandle* opinion, the language cited by the Department simply does not create a two-prong test. As Carnahan correctly posits, the second sentence (*i.e.,* the supposed second prong) was merely intended to reiterate the first sentence. (*See* Hr'g Tr. at 10.) Stated differently, the two sentences represent two sides of the same coin, both focusing on the use of the property. If, on the one hand, the property is used predominantly for third-party public transportation, then the taxpayer is entitled to the exemption. Conversely, if the property is *not* predominantly used for third-party public transportation (*i.e.,* it is predominantly used to transport the taxpayer's own property), then the taxpayer is not entitled to the exemption.

Not only is the Department's reading out of step with the rest of the *Panhandle* opinion, it is also inconsistent with prior cases applying the public transportation exemption. Those cases have uniformly held that it is the predominant use of the property that determines whether or not the taxpayer is entitled to the public transportation exemption.[5] Nevertheless, the Department states that "the Tax Court has previously looked at the taxpayer's total income versus the taxpayer's income from the exempt activity to determine whether the taxpayer qualifies for the public transportation exemption." ([Resp't] Br. in Resp. to [Pet'r] Mot. for Summ. J.

---

**5.** *See, e.g., Meyer Waste Sys., Inc. v. Indiana Dep't of State Revenue,* 741 N.E.2d 1, 5 (Ind. Tax Ct.2000), *review denied; Indiana Waste Sys. of Indiana, Inc. v. Indiana Dep't of State Revenue,* 644 N.E.2d 960, 961 (Ind. Tax Ct.1994); *Nat'l Serv–All, Inc. v. Indiana Dep't of State Revenue,* 644 N.E.2d 954, 956 (Ind. Tax Ct.1994); *Indiana Dep't of State. Revenue v. Calcar Quarries, Inc.,* 182 Ind.App. 84, 394 N.E.2d 939, 941 n. 1 (1979).

at 6 (citing *Indiana Waste Sys. of Indiana, Inc. v. Indiana Dep't of State Revenue*, 644 N.E.2d 960, 962 (Ind. Tax Ct.1994).)) This statement, while technically accurate, requires some context.

In *Indiana Waste*, the taxpayer's only line of business was hauling garbage. *See Indiana Waste*, 644 N.E.2d at 961. The taxpayer hauled both garbage it owned and garbage owned by third parties. *See id.* Accordingly, because the taxpayer's income was derived solely from hauling, the Court was able to look at its total income versus its income from third-party hauling to determine whether the property was being used predominantly for third-party public transportation. *See id.* at 962. The Court did *not* look at the taxpayer's total income to assess the nature of the taxpayer's business as a whole. *See id.* ("The question of [the taxpayer's] predominant *use of the equipment* is the only material factual question in this case") (emphasis added). Consequently, the Department's position derives no support from this case.

A more apt comparison can be drawn between the case at hand and a 1979 decision of the Indiana Court of Appeals. *See Indiana Dep't of State. Revenue v. Calcar Quarries, Inc.*, 182 Ind.App. 84, 394 N.E.2d 939 (.1979). In that case, the taxpayer, like Carnahan, was engaged in multiple lines of business. In addition to hauling road construction materials, Calcar also operated a stone quarry, a hot mix asphalt plant, and a ready mix concrete facility. *See Calcar*, 394 N.E.2d at 940. Calcar's evidence demonstrated that ap-

proximately 90% of the crushed stone it hauled went to the job sites of third parties rather than to its own job sites. *See id.* at 941. Accordingly, the court held that it was entitled to the exemption. *Id.*

In reaching its decision in *Calcar*, the court focused solely on the use of the property, stating that "when an item has been used for several purposes and only some of the purposes qualify the item for exemption, the taxpayer can gain exemption for the total amount of the purchase price of the item by showing that the item was used predominantly in an exempt manner." *Id.* at 941 n. 1. The court did not consider or address the taxpayer's other lines of business in that case. This Court will not do so here either.[6] Accordingly, because Carnahan predominantly used the property at issue for transporting agricultural commodities owned by third parties, it is entitled to the public transportation exemption.

### CONCLUSION

For the above stated reasons, the Court GRANTS Carnahan's motion for summary judgment and DENIES the Department's motion for summary judgment.[7]

SO ORDERED this 1st day of June, 2005.

---

6. Both parties have submitted arguments regarding what business Carnahan is predominantly engaged in and what type of analysis should be used in order to make that determination. Because the Court holds that the relevant inquiry is the use of the property at issue rather than the nature of the taxpayer's business, it is not necessary to address those arguments.

7. *But see supra* note 2.