480

WENDT LLP, Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 02T10–0701–TA–2.

Tax Court of Indiana.

Oct. 30, 2012.

Robert L. Nicholson, Carson Boxberger, Mark E. Witmer, Adam L. Hand, Beckman Lawson, LLP, Fort Wayne, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Jessica E. Reagan, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

WENTWORTH, J.

This case concerns the applicability of Indiana's public transportation sales and use tax exemption to purchases of a licensed common carrier. The Indiana Department of State Revenue determined that just a portion of Wendt LLP's 2001 through 2004 purchases of tangible personal property were entitled to the public transportation exemption. The Court affirms in part and reverses in part.

### FACTS

Wendt, a licensed common carrier headquartered in Wabash, Indiana, is in the business of intrastate, interstate, and international relocation of oversized factory machinery. (*See* Jt. Stip. at ¶ 1; Resp't Des'g Evid. Vol. 2, Ex. 20 at 4–8, 12–13.) Wendt provides its relocation services within a public transportation process that includes several component services that the Court describes generally in four operational phases.

1. *Project Planning.* Wendt begins planning relocation by preparing estimates for potential customers, considering, among other things, the costs of labor, machinery disassembly, fuel consumption,

and equipment requirements. (*See* Resp't Des'g Evid. Vol. 2, Ex. 20 at 15–18, 27–28.) Once hired, Wendt plans the most expeditious route, taking into account the overall size of the loads as well as certain state and federal highway regulations, and also procures travel permits from federal and state authorities. (*See* Trial Tr. at 44–45; Resp't Des'g Evid. Vol. 2, Ex. 20 at 14–15, 152–58.)

2. *Pre-transport Preparations.* Next, Wendt's moving crews travel to the customer's factory to prepare the machinery for transport. First, the crews lay steel plates down to protect the factory floors and facilitate the machinery's movement. (*See* Resp't Stip. Pet'r Contentions (hereinafter "Resp't Stip.") at 2.) Next, the crews disassemble the machinery to make it suitable for transport based on state and federal size mandates, fork-lift capacities, and entryway and shipping container dimensions; label the pieces for reassembly; disconnect electrical components; drain certain liquids; and clean dirty parts. (*See* Trial Tr. at 46–48; Resp't Stip. at 2.) Once the machinery is in a transportable size, the crews use fork trucks with hydraulic booms to lift it, rig[1] it to semi-trailers, and then cover it with tarps. (*See* Resp't Stip. at 2 (footnote added).)

3. *Transportation.* During the actual transportation of machinery on public highways, both state and federal regulations require Wendt to escort the load, which Wendt does using its own pick-up trucks or by hiring escort vehicles to accompany the machinery throughout all or a portion of the transport. (*See* Trial Tr. at 47, 64–65.) Wendt also uses its pick-up trucks to transport its crews, their tools, and other equipment to the relocation site so they can unload the machinery upon arrival.

4. *Reassembly.* This fourth phase of Wendt's public transportation process begins after its crews unload the machinery at the relocation site. During this phase, Wendt provides machinery installation services, which mainly include the reassembly and setting/leveling of the machinery. (*See* Oral Argument Tr. at 19–20; Trial Tr. at 58; Resp't Des'g Evid. Vol. 2, Ex. 20 at 13, 124–26.)

In addition to its general public transportation process, Wendt also provided several optional services such as warehouse storage and transport-for-repair services during the years at issue.[2] Wendt offers these services in association with one or more of the phases of its general public transportation process or on a stand-alone basis.

Additional facts will be supplied as necessary.

## PROCEDURAL HISTORY

In October 2004, the Department conducted a sales tax audit of Wendt for the 2002 through 2004 tax years. During the course of the audit, Wendt filed two refund claims seeking to recover the sales and use tax remitted on purchases made during the 2001 through 2004 tax years (the years at issue),claiming they were exempt. The

1. In the transportation industry, the process of securing machinery to fork trucks, booms, and semi-trailers is called "rigging" or "rigging out." (*See* Resp't Stip. Pet'r Contentions (hereinafter "Resp't Stip.") at 2.)

2. Wendt also provides equipment rental and in-house relocation services; these services, however, are not at issue because Wendt admits they are not associated with its provision of public transportation. (*See* Pet'r Reply Br. at 3; Pet'r Br. at 22.) In addition, Wendt offers conveyor and blue steel installation and industrial fabrication services, which also are not at issue because Wendt did not provide these services during the years at issue. (*See* Resp't Des'g Evid. Vol. 2, Ex. 20 at 9–11, 32–34, 130–32.)

audit concluded that some of Wendt's purchases were completely exempt, but others were either partially or fully taxable. As a result, the Department denied Wendt's claims for refund and issued proposed assessments.

In late June 2006, Wendt protested the proposed assessments and the refund claim denials. On September 11, 2006, the Department denied Wendt's protest of the proposed assessments in part and its refund claims in their entirety.

Wendt filed this original tax appeal on January 5, 2007. The Court conducted a trial on October 15, 2009, and heard oral arguments on June 4, 2010.

## ISSUE

The issue before the Court is whether Wendt's purchases of tangible personal property were predominantly used in providing public transportation and thus exempt under the public transportation exemption for the years at issue.[3]

## STANDARD OF REVIEW

The Court reviews final determinations of the Department *de novo*. IND.CODE § 6–8.1–5–1(i) (West 2012). Accordingly, the Court is not bound by the evidence or the issues presented at the administrative level. *Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue*, 865 N.E.2d 725, 727 (Ind. Tax Ct.2007) (citation omitted), *review denied*.

■ Transactions subject to Indiana's sales or use tax may be relieved of tax liabilities if they qualify for a statutory exemption. *See generally* Ind.Code 6–2.5–5–1 *et seq.* (2012). "It is well-settled that tax exemptions are to be strictly construed against the taxpayer, and the taxpayer bears the burden of proving entitlement to the exemption." *Grand Victoria Casino & Resort, LP v. Indiana Dep't of State Revenue*, 789 N.E.2d 1041, 1044 (Ind. Tax Ct.2003) (citation omitted). Nonetheless, a court may not apply an exemption so narrowly that it fails to give effect to the Legislature's purpose for enacting the exemption. *Indiana Dep't of Revenue v. Kitchin Hospitality, LLC*, 907 N.E.2d 997, 1001 (Ind.2009) (citation omitted).

## LAW

### Direct Use

■ The Legislature enacted the public transportation exemption to encourage the development, maintenance, and efficient provision of public transportation.[4] *Indianapolis Pub. Transp. Corp. v. Indiana Dep't of State Revenue*, 512 N.E.2d 906, 908 (Ind. Tax Ct.1987), *aff'd by* 550 N.E.2d 1277 (Ind.1990) (footnote added). The exemption states:

> Transactions involving tangible personal property and services are exempt from the state gross retail [sales] tax, if the person acquiring the property or service directly uses or consumes it in providing

---

3. The Department also argues that the Court lacks jurisdiction to hear Wendt's two refund claims because neither was appealed within the statutorily prescribed 90–day period. (*See* Oral Argument Tr. at 43–45.) *See* Ind.Code § 6–8.1–9–1(c)(2) (2006) (amended 2007). The Department, however, denied Wendt's refund claims in its September 11, 2006 Letter of Findings and Wendt appealed exactly 116 days later. Therefore, Wendt timely appealed the denial of its refund claims pursuant to

Indiana Code § 6–8.1–5–1(g). *See* Ind.Code § 6–8.1–5–1(g) (2006) (providing litigants with 180 days to appeal denials of refund claims) (amended 2006).

4. A common carrier provides public transportation when it "move[s], transport[s], or carr[ies] persons and/or property for consideration." *See* 45 Ind. Admin. Code § 2.2–5–61(b) (2001).

public transportation for persons or property.

IND.CODE § 6–2.5–5–27 (2001) (emphasis added).[5] Cases construing the words emphasized in the above statute, commonly referred to as the "single directness standard," require property to be a "necessary and integral" part of the transportation service to qualify for exemption. *See Indiana Dep't of State Revenue v. Indiana Harbor Belt R.R. Co.*, 460 N.E.2d 170, 177 (Ind.Ct.App.1984); *see also USAir, Inc. v. Indiana Dep't of State Revenue*, 623 N.E.2d 466, 471–72 (Ind. Tax Ct.1993); *USAir, Inc. v. Indiana Dep't of State Revenue*, 542 N.E.2d 1033, 1036 (Ind. Tax Ct.1989), *aff'd by* 582 N.E.2d 777 (Ind. 1991). The public transportation exemption, therefore, applies more broadly than exemptions measured by the double directness standard, *e.g.*, manufacturing exemptions. *See, e.g., Indianapolis Pub. Transp.*, 512 N.E.2d at 908–09; *Harbor Belt*, 460 N.E.2d at 172; *Indiana Dep't of State Revenue v. Indianapolis Transit Sys., Inc.*, 171 Ind.App. 299, 356 N.E.2d 1204, 1208 (1976). Moreover, the exemption extends to property used within a taxpayer's continuous process of furnishing public transportation because providing effective public transportation may involve a system in which all the elements of the system must be furnished:

An item need not be in direct contact with the rails to be directly used or consumed in the rendering of public transportation. A railroad is a system and, in order for the railroad to provide effective transportation, all elements of that system must be furnished including, but not limited to, maintaining railroad lines, transporting workers, and maintaining supply and repair facilities.

*Harbor Belt*, 460 N.E.2d at 175. *See also Indiana Dep't of State Revenue v. Cave Stone, Inc.*, 457 N.E.2d 520, 522–26 (Ind. 1983); *Guardian Auto. Trim, Inc. v. Indiana Dep't of State Revenue*, 811 N.E.2d 979, 982–85 (Ind. Tax Ct.2004), *review denied; General Motors Corp. v. Indiana Dep't of State Revenue*, 578 N.E.2d 399, 401–04 (Ind. Tax Ct.1991), *aff'd by* 599 N.E.2d 588 (Ind.1992) (all discussing taxpayers' integrated production processes).[6]

### Predominant Use

The public transportation exemption is an all-or-nothing exemption that does not permit the grant of partial exemptions. *Panhandle E. Pipeline Co. v. Indiana Dep't of State Revenue*, 741 N.E.2d 816, 819 (Ind. Tax Ct.2001), *review denied.* Furthermore, the exemption statute has been construed to require an item to be

**5.** A complementary exemption from use tax applies to tangible personal property that is stored, used, or consumed in Indiana if the property is "acquired in a transaction that is wholly or partially exempt from the state gross retail [sales] tax under any part of IC 6–2.5–5, except IC 6–2.5–5–24(b), and the property is being used, stored, or consumed for the purpose for which it was exempted." IND. CODE § 6–2.5–3–4(a)(2) (2001).

**6.** The Department promulgated 45 I.A.C. 2.2–5–61 and 45 I.A.C. 2.2–5–62 to conform with the decision in *Harbor Belt*, which construed Indiana Code § 6–2.5–5–27; nonetheless, these regulations apply to all public transportation systems. *See USAir, Inc. v. Indiana*

*Dep't of State Revenue*, 623 N.E.2d 466, 471–72 (Ind. Tax Ct.1993). Moreover, the Court notes that these regulations condition qualification for exemption on whether the tangible personal property is "reasonably necessary" or "indispensable and essential" to the rendering of public transportation. *See* 45 I.A.C. 2.2–5–61(c); 45 Ind. Admin. Code 2.2–5–62(d) (2001). The regulations, however, must be construed harmoniously with the "necessary and integral" standard established by case law. *See USAir, Inc. v. Indiana Dep't of State Revenue*, 542 N.E.2d 1033, 1036 (Ind. Tax Ct.1989), *aff'd by* 582 N.E.2d 777 (Ind. 1991).

predominantly used, not exclusively used, in public transportation to be exempt. *See Carnahan Grain, Inc. v. Indiana Dep't of State Revenue*, 828 N.E.2d 465, 468–69 (Ind. Tax Ct.2005); *Panhandle*, 741 N.E.2d at 818–19; *Indiana Dep't of State Revenue v. Calcar Quarries, Inc.*, 182 Ind. App. 84, 394 N.E.2d 939, 941 n. 1 (1979).

## ANALYSIS

The parties agree about how Wendt uses the property at issue, and they agree that Wendt is generally in the business of providing public transportation. (*See* Oral Argument Tr. at 4–5, 25–26.) The essence of the parties' dispute focuses on the proper way to determine whether Wendt's purchases of tangible personal property are entitled to the public transportation exemption. Wendt claims the property at issue is entitled to exemption because it is predominantly used or consumed within its integrated public transportation process, while the Department counters that none of the property at issue is exempt because it is not directly used to furnish public transportation.

Wendt claims that nearly all of its purchases of tangible personal property at issue are exempt because it uses or consumes the property to provide public transportation in its unique, integrated public transportation process.[7] (*See* Pet'r Br. at 21–22 (footnote added).) Wendt describes its integrated process as encompassing a bundle of services made up of several integrated, indivisible, and continuous steps that are all necessary or immediately linked to its provision of public transportation. (*See* Oral Argument Tr. at 6, 23; Pet'r Reply Br. at 1–2; Pet'r Br. at 18–20.) Wendt contends that each phase of its integrated process, beginning at the moment a customer calls for an estimate and ending with the reassembly of the machinery at the destination, involves the provision of public transportation. (*See* Oral Argument Tr. at 4–11.)

The Department responds, however, that Wendt's services are provided not as an integrated public transportation process, but as nothing more than a unique, all-in-one business model that offers a menu of *à la carte* services, some that are public transportation and some that are not.[8] (*See* Oral Argument Tr. at 32–38, 41–42; Resp't Br. at 5–6 (footnote added).) Explaining, the Department states that Wendt's competitors provide many of the same services on a stand-alone basis, but the property used to provide those individual services is ineligible for exemption; thus, Wendt's similar services must be ineligible.[9] (*See* Oral Argument Tr. at 23, 32,

7. Wendt concedes that its purchases of greeting cards, Camaro tires, certain magazine subscriptions, and certain beams are taxable. (*See* Trial Tr. at 70–78, 82–83; Resp't Des'g Evid. Vol. 2, Ex. 20 at 68–69, 74, 89–90.)

8. The Department also claims that because Wendt admitted, during the administrative proceedings, that some of its services did not involve public transportation, all property predominately used in providing those services is taxable. (*See* Resp't Br. at 4–5 (*citing* Resp't Des'g Evid. Vol. 1, Ex. 10 at 2).) The Department is incorrect because admissions made at the administrative level are not binding here. *See Horseshoe Hammond, LLC v.*

*Indiana Dep't of State Revenue*, 865 N.E.2d 725, 727 (Ind. Tax Ct.2007), *review denied.*

9. The Department also suggests that including Wendt's public transportation process and optional services within the scope of the public transportation exemption provides Wendt with an unfair business advantage over its competitors and treats Wendt differently than other taxpayers. (*See* Oral Argument Tr. at 32–34.) The Department, however, has not supported its implied equal protection claim with any analysis; therefore, the claim is waived. *See Scopelite v. Indiana Dep't of Local Gov't Fin.*, 939 N.E.2d 1138, 1145 (Ind. Tax Ct.2010) (explaining that poorly devel-

36–41; Resp't Br. at 3, 5 (footnote added).) The Department concludes that given individual scrutiny, not evaluation based on the relationship to Wendt's core activity of transporting machinery on the highways, the property at issue is not exempt because it is not "directly used or consumed in providing public transportation." (*See* Oral Argument Tr. at 23, 36–39 (footnote added)); *see also* I.C. § 6–2.5–5–27.

### Direct Use

As discussed above, Wendt's property will qualify for exemption if the evidence shows that it is "necessary and integral" to Wendt's provision of public transportation services. *See USAir*, 542 N.E.2d at 1036. Moreover, the exemption extends to items directly used in a continuous, integrated public transportation process. *See Harbor Belt*, 460 N.E.2d at 175. Accordingly, the critical question here is whether Wendt's property is necessary and integral to Wendt's integrated public transportation process.

#### *Phase 1: Project Planning*

██ As detailed in the facts above, Wendt claims its public transportation process begins when it prepares estimates for potential customers. Wendt's estimates are better characterized as sales activity, however, because they are intended to present the lowest bid and obtain a customer. (*See* Resp't Des'g Evid. Vol. 2, Ex. 20 at 27–28.) Thus, while Wendt's estimates may be connected to its provision of public transportation, they do not always garner a customer and therefore are not necessary and integral to furnishing public transportation. Moreover, this conclusion

is consistent with those portions of the public transportation regulations that deem property used for sales and other non-operational activities, such as cost projections, ineligible for exemption. *See* 45 Ind. Admin. Code 2.2–5–61(e), (m) (2001); *see also* 45 Ind. Admin. Code 2.2–5–62(f), (k) (2001). Accordingly, the Court finds that preparing estimates is not part of Wendt's public transportation process and, therefore, property used in providing these services is not necessary and integral to Wendt's integrated public transportation process.

██ In this phase, Wendt also plans transportation routes and obtains travel permits. Both are necessary and integral to Wendt's public transportation process because Wendt could not legally haul oversized machinery over the highways without travel permits for the route being traveled.[10] Moreover, the public transportation regulations deem a common carrier's purchases of items to comply with federal and state mandates, as reasonably necessary to the rendering of public transportation. *See* 45 I.A.C. 2.2–5–61(d); *see also* 45 I.A.C. 2.2–5–62(e). Therefore, property used to plan the routes and obtain the travel permits is necessary and integral to Wendt's integrated public transportation process.

#### *Phase 2: Pre-transportation Preparations*

██ As stated in the facts above, Wendt's pre-transportation preparations involve the disassembly, loading, and se-

oped and non-cogent arguments are subject to waiver).

**10.** Common carriers that fail to obtain permits for the transport of oversized and overweight loads are subject to fines. *See* Ind. Code § 9–20–6–1 *et seq.* (2001) (oversized/overweight permits); *see also* Ind.Code § 9–20–

5–1 *et seq.* (2001) (regarding Indiana's heavy and extra-heavy duty highways); Motor Carrier Services Commercial Motor Vehicle Guidebook, *available* at http://www.in.gov.dor/4194.htm; Oversized/Overweight (OSW) Vehicle Permitting Handbook, *available at* http://www.in.gov.dor/4194.htm.

curing of oversized machinery onto the flatbed trucks for transport. Disassembly and loading are necessary and integral to Wendt's public transportation process because without disassembly, the machinery would be too heavy for loading and too large for legal road transport.[11] As just mentioned, a common carrier's activities to comply with legal requirements are necessary and integral to furnishing public transportation. *See* 45 I.A.C. 2.2–5–61(d); *see also* 45 I.A.C. 2.2–5–62(e); *USAir*, 582 N.E.2d at 778 (explaining that the public transportation exemption extends to items that are legally required for continued operations). Furthermore, although pre-transportation activities generally are excluded from the definition of public transportation, property used for the "loading and unloading of persons or property into or from transportation vehicles" is expressly included within the scope of public transportation. *See* 45 I.A.C. 2.2–5–61(f), (j); *see also* 45 I.A.C. 2.2–5–62(g). Thus, the Court finds that Wendt's property used to disassemble, load, and secure its customer's machinery for subsequent movement over the highways is necessary and integral to Wendt's public transportation process.

### Phase 3: Transportation

■ This phase involves the seminal activities of Wendt's public transportation process. Wendt hauls its customers' machinery on the highways, provides escort services, and unloads the machinery at the customer's destination. Hauling oversized machinery over the state and federal highways is necessary and integral to Wendt's public transportation process because it embodies the very essence of public transportation: the movement of another's property for consideration. *See* 45 I.A.C. 2.2–5–61(b), (f); 45 I.A.C. 2.2–5–62(c), (g). Escort services are required by federal and state law and thus are necessary and integral to the provision of public transportation. *See, e.g.,* http:www.in.gov/dor/files/m204.pdf (detailing Indiana's escort vehicle requirements). In addition, unloading property from transportation vehicles is expressly included within the scope of public transportation. *See* 45 I.A.C. 2.2–5–61(f), (j); *see also* 45 I.A.C. 2.2–5–62(g). Accordingly, the Court finds that Wendt's property used to transport, escort, and secure its customers' machinery is necessary and integral to Wendt's public transportation process.

### Phase 4: Reassembly

■ As described in the facts above, Wendt reassembles the oversized machinery inside the customer's new factory location.[12] Wendt performs its reassembly services post-delivery, and reassembly services have no apparent link to any federal or state mandates. Accordingly, Wendt's reassembly services are a convenience for its customers that are incidental to its provision of public transportation and, thus, they fall outside the ambit of public transportation. *See USAir*, 582 N.E.2d at 779 (affirming the denial of exemption on certain food items that were "incidental" to the taxpayer's transportation service). Moreover, this finding is also consistent with the public transportation regulations

---

11. *See, e.g.,* Ind.Code § 9–20–3–1 *et seq.* (2001) (width, length, and height restrictions); Ind.Code § 9–20–4–1 et *seq.* (2001) (weight restrictions); 23 C.F.R. § 658.5 (2012) (defining non-divisible load); 23 C.F.R. §§ 658.13, 658.15, 658.17 (2012) (length, width, and weight restrictions).

12. During disassembly, Wendt labels the pieces of the machinery to facilitate reassembly. Although done at the time of disassembly, the property used to provide this service will be treated in the same manner as other items used in reassembly.

that do not include post-transportation activities in the definition of public transportation. *See* 45 I.A.C. 2.2–5–61(f); 45 I.A.C. 2.2–5–62(g).

#### Optional Services

■ During the years at issue, Wendt also provided warehouse storage exclusively for the temporary storage of its customers' in-transit property. (*See* Resp't Des'g Evid. Vol. 2, Ex. 20 at 82–85.) "[T]emporary storage is considered to be an integral part of rendering public transportation." 45 I.A.C. 2.2–5–61(g). Therefore, all tangible personal property used to provide warehouse storage services falls within the scope of public transportation.

■ Wendt also transported its customers' machinery to third party locations for repair services. (*See* Trial Tr. at 59–61.) When a common carrier moves another's property over the highways for consideration, it is providing public transportation. 45 I.A.C. 2.2–5–61(b); 45 I.A.C. 2.2–5–62(c). Therefore, the property used to provide Wendt's transport-for-repair services also falls within the scope of public transportation.

In this case, the evidence shows that Wendt's services are generally provided as a continuous, integrated process of transporting its customers' oversized equipment on the highways. Wendt's process is integrated because each phase of Wendt's business is interrelated and dependent upon the others. For instance, without disassembling the machinery, it would be too large for road transport; without escorts accompanying the oversized loads along the highway, the equipment could not lawfully travel the roads; without using ties to secure the equipment to the

trucks, efficient transportation could not be accomplished. Moreover, an argument that others could not qualify for exemption by providing one of Wendt's component services on a stand-alone basis does not persuade the Court to disqualify individual elements of an integrated public transportation process from eligibility for exemption.

### Predominant Use

■ Having decided what property Wendt uses for exempt and non-exempt purposes, the Court now considers whether Wendt has shown that it predominately used the tangible personal property at issue in providing public transportation.[13] The Court has acknowledged that there are many ways to show that items are predominantly used in an exempt manner. *See Indiana Waste Systems Ind., Inc. v. Indiana Dep't of State Revenue,* 644 N.E.2d 960, 961–62 (Ind. Tax Ct.1994). For example, predominate use may be shown by providing credible testimony, providing the ratio of income derived from the property's exempt use to the income derived from its non-exempt use, providing the ratio of the time spent using the property in an exempt manner to the time it is used in a non-exempt manner, or providing a similar ratio calculation based on volume. *See id.; Calcar Quarries,* 394 N.E.2d at 941.

■ Here, the evidence at trial established how Wendt used its property with respect to its public transportation process and optional services. (*See, e.g.,* Resp't Des'g Evid. Vol. 2, Ex. 20 at 10–89; Ex. 24 at 5–6, 10–12.) Furthermore, the uncontroverted testimony of Mr. Jere Wendt, one of Wendt's founding partners, established that, during the years at issue, 70 percent of the jobs Wendt performed in-

---

13. As an initial matter, and as previously explained, the public transportation exemption does not permit the grant of partial exemptions; consequently, the Department erred in granting Wendt a partial exemption. *See Panhandle E. Pipeline Co. v. Indiana Dep't of State Revenue,* 741 N.E.2d 816, 819 (Ind. Tax Ct.2001), *review denied.*

volved the provision of public transportation. (*See* Trial Tr. at 39–40, 61–73.) The Court not only finds Mr. Wendt's testimony to be credible, but also finds that his testimony is corroborated by the Department's audit findings. The auditor's block sample shows that nearly 70 percent of Wendt's jobs involved the exclusive provision of public transportation.[14] Accordingly, the evidence before the Court leads to only one reasonable conclusion: between the 2001 and 2004 tax years, Wendt predominately used its property in providing public transportation, and the Department erred in concluding otherwise.

## CONCLUSION

For the above-stated reasons, the Court AFFIRMS the Department's determina-

tion that the items predominately used for estimate preparations, machinery reassembly, and lawn care were not entitled to the public transportation exemption. All of the Department's remaining determinations, however, are REVERSED. Accordingly, the Court REMANDS the matter to the Department and ORDERS it to make the necessary determinations in accordance with this opinion.

14. More precisely, the auditor used a block sample of Wendt's January 2004 through March 2004 receipts, which consisted of 261 separate invoices, that he allocated in whole or in part to eight categories of exempt and non-exempt services. (*See* Resp't Des'g Evid. Vol. 1, Exs. 6–7.) The auditor's workpapers show that 177 invoices were associated with the provision of exempt services (*i.e.*, disas-

sembly, rigging/repair services, trucking, loading, and warehouse storage), and 84 of the invoices involve either the exclusive or partial provision of non-exempt services (*i.e.*, equipment rental/parts fabrication, load/transport/unload/set & level, and in-house relocations). (*See* Resp't Des'g Evid. Vol. 1, Ex. 7.) The resulting ratio is 68% exempt to 32% non-exempt.